[Civ. No. 7363.   Third Dist.   Oct. 27, 1947.]

C. ANDERS et al., Appellants, v. STATE BOARD OF
EQUALIZATION, Respondent.

Thorpe & Bridges and Gerald Bridges for Appellants.

Fred N. Howser, Attorney General, and E. G. Benard, Deputy Attorney General, for Respondent.

THOMPSON, J.—The plaintiffs have appealed from a judgment which was rendered against them in a suit to recover

retail sales taxes paid under protest. The taxes were assessed by the State Board of Equalization under the Retail Sales Tax Act in the sum of $2,319.82. They were levied on a portion of the tips received by waitresses incident to sales of food and drinks furnished to patrons of plaintiffs in their drive-in restaurant conducted in Los Angeles. By agreement between the employers and the waitresses, said tips, to the extent of an amount equal to the minimum wages fixed by the Industrial Welfare Commission, were credited on the minimum wages due and payable. The trial court rendered judgment against plaintiffs on the theory that such tips were a part of the ''gross receipts . . . from the sale of all tangible personal property.''

The cause was heard and determined on a written stipulation of facts containing the statement that plaintiffs are a copartnership doing a restaurant business at Los Angeles under the firm name of ''Carl's,'' and that they employed waitresses to serve food and drinks to their patrons in the restaurant and in cars parked at said place of business. The stipulation also contains the following statements:

''That at all times herein mentioned the employment arrangement between plaintiffs and their waitresses and car hops was substantially as follows:

''The employee retained all tips and gratuities *as compensation for the employee's service.* The plaintiffs guaranteed to the employee that if the tips and gratuities did not equal the minimum wages as provided by the laws of the State of California and the orders, rules and regulations of the boards and commissions administering said laws, the plaintiffs *would pay to the employees such sums as added to the tips and gratuities received by them would equal the minimum wage provided by the laws of the State of California* and the orders, rules and regulations of the boards and commissions administering said laws. That is, if the tips and gratuities received by the employee did not equal the minimum wage fixed by the Industrial Welfare Commission of the State of California, the plaintiffs would make up the difference. . . .

''That said reassessment in the sum of $2319.82 *was based upon tips and gratuities which had been received by waitresses and car hops* of plaintiffs during the periods covered by said assessment and *which had been credited by said employees against the minimum wage guaranteed by the plaintiffs.* That is, the amount of $64,950.50 reassessed was the amount of tips received by waitresses and car hops of plaintiffs from April 1, 1937, to March 31, 1940, and credited against the minimum

wage guaranteed by plaintiffs to said employees. . . .'' (Italics added.)

It was further stipulated that *the waitresses made no claim against plaintiffs to the ownership of said tips so applied,* as a part of their minimum wages, and that said evidence of the application of such tips to the minimum wages of the waitresses should be deemed to have been received in evidence over plaintiffs' objection that it is immaterial and incompetent.

We are of the opinion the challenged evidence was competent for the reasons hereafter assigned, and that the objection thereto was properly overruled.

We construe the foregoing stipulation to mean that plaintiffs and their employees agreed that the tips received by the latter should belong to plaintiffs, *to the extent of the amount of fixed minimum wages,* the payment of which the employers guaranteed. The payment of minimum wages was an obligation created by law, which became a part of the contract of employment. If no part of the tips belonged to the employers, the plaintiffs have not paid the minimum wages required by law, and would still be liable for such wages. The stipulation indicates that the respective parties to the contract of employment agreed and assumed that minimum wages had been paid from the tips received, for it states that the tips "had been credited *by said employees* against the minimum wage guaranteed by the plaintiffs.'' It further states that the waitresses make no claim against plaintiffs to the ownership of the tips, to the extent of the amount of minimum wages. Clearly that means they mutually agreed that the tips, to the amount necessary to pay minimum wages, should belong to plaintiffs. It is significant that the stipulation does not state that all tips received shall *belong to the waitresses.* All that it states in that respect is that all tips shall be *retained* by the employees as compensation for services. In support of the judgment, that language may reasonably be construed to mean the waitresses might *retain* all tips subject to the crediting of sufficient tips to satisfy plaintiffs' obligation to pay minimum wages, which portion should belong to the employers.

The question to be determined is whether tips received by waitresses in a restaurant on account of their services, to the extent of their minimum wages fixed by law, become part of the gross receipts of the employer for sales of tangible personal property, to wit, food and drinks, in view of the contract of employment to the effect that such tips shall be credited

to the payment of minimum wages as a part of the waitresses' compensation for services, and that they were actually so credited.

We are of the opinion the tips received by the waitresses, to the extent of the minimum wages provided for by law, in the sum of $16.75 per week for each waitress, became a part of plaintiffs' gross receipts for services in connection with their sales of tangible personal property, since it was agreed between plaintiffs and their waitresses, in effect, that such tips belonged to the employers and would be credited on payments of minimum wages, and that they were actually so credited. It is stipulated that the taxes in question, aggregating the sum of $2,319.82, were "based upon tips and gratuities which had been received by waitresses and car hops of plaintiffs during the periods covered by the assessment," and that they "had been credited by said employees against the minimum wages guaranteed by the plaintiffs." In spite of the usual rule that, in the absence of an agreement to the contrary, tips received by employees belong to them, by the terms of the contract and understanding in this case the tips, to the extent of the amount of minimum wages fixed by law, belonged to plaintiffs, and they were credited by the employees thereon, rendering them a part of plaintiffs' gross receipts for services performed incident to retail sales of tangible personal property. It follows that the Board of Equalization properly levied and collected sales taxes on said tips as a part of the gross receipts from the sales of tangible personal property.

The tips, which are the basis for the taxes levied, were received "from April 1, 1937, to March 31, 1940." The taxes were levied under the Retail Sales Tax Act of 1933. (Stats. 1933, p. 2599, Deering's Supp. of Codes and Laws, 1933, p. 1956, Act 8493.) That act was subsequently amended, but only with respect to provisions which do not affect the validity of the taxes imposed in the present case. The sales taxes were levied under section 3 of that act. Such taxes constitute an "excise" or "privilege tax," as distinguished from personal property taxes. (*Roth Drug, Inc.* v. *Johnson*, 13 Cal. App.2d 720, 730 [57 P.2d 1022].) The Retail Sales Tax Act is not unconstitutional or discriminatory. (*Roth Drug, Inc.* v. *Johnson, supra.*) The term "Sale" is defined in section 2(b) of the act, as "any transfer, exchange or barter . . . of tangible personal property, for a consideration, and includes the furnishing, preparing or serving for a consideration of any tangible personal property consumed on the premises of

the person furnishing, preparing or serving such tangible personal property.'' Section 2(f) of that act declares that '' 'Gross receipts' means the total amount of the sale price of the retail sales of retailers, *including any services that are a part of such sales, valued in money, whether received in money or otherwise, including all receipts, cash, credits and property of any kind or nature,* and also any amount for which credit is allowed by the seller to the purchaser, without any deduction therefrom on account of the cost of the property sold, the cost of the materials used, labor or service cost, interest paid, losses or any other expenses whatsoever. . . .'' (Italics added.)

In the present case the waitresses were required by the terms of their employment to perform the services incident to furnishing the customers with foods or drinks, regardless of whether they also received tips from customers in addition to the normal cost prices therefor. They agreed with plaintiffs that such tips, *to the extent of the amount of their minimum wages,* would apply on the payment of minimum wages. In effect, such tips, *to that extent,* become the property of the employer. They were received by the waitresses as plaintiffs' employees and agents. They were applied and credited as wages pursuant to contract. They were received incident to the services performed in the sales of food and drinks. It is immaterial that such receipts were not actually paid by the waitresses to plaintiffs and entered on their books of accounts, and then returned in cash to the waitresses, but were retained and credited by the waitresses on their minimum wages. That transaction was a mere business routine adopted by consent to avoid labor and inconvenience. Since such tips, to the extent of the amount of minimum wages, were derived incident to the sales, and by contract became the property of plaintiffs, they were a part of the receipts of the sales, and therefore properly taxable pursuant to section 2(b) of the act.

The fact that the balance of all tips received by the waitresses, over and above the amount of minimum wages, belonged to them, is likewise immaterial. That was also a part of the agreement with the employers that they should retain such excess tips as their compensation for services. Since the tips in excess of minimum wages were not claimed by plaintiffs, or required to be credited by the employees, they belonged to the waitresses, and the Board of Equalization properly disregarded them in levying the taxes. Ordinarily, in the absence of an agreement between the employer and the em-

ployee, tips received by the latter are deemed to be voluntary contributions from the donors to the employee, and belong to the latter. (*Herbert's Laurel-Ventura, Inc.* v. *Laurel Ventura Holding Corp.*, 58 Cal.App.2d 684, 694 [138 P.2d 43]; *In re Farb*, 178 Cal. 592, 599 [174 P. 320, 3 A.L.R. 301]; *Williams* v. *Jacksonville Terminal Co.*, and *Pickett* v. *Union Terminal Co.*, consolidated for hearing, 315 U.S. 386, 397 [62 S.Ct. 659, 86 L.Ed. 914, 925]; note, 13 A.L.R. 921.)

■ The minimum wages of employees fixed by law, are deemed to be a part of the contract of employment. (*Hays* v. *Bank of America*, 71 Cal.App.2d 301, 304 [162 P.2d 679].)

■ The Industrial Welfare Commission of California is authorized to fix reasonable minimum wages of women engaged in any occupation, trade or industry. (Lab. Code, § 1182; Stats. of 1929, p. 554.) Any woman, so employed, may maintain an action against the employer to recover the full amount of such unpaid minimum wages. (Lab. Code, § 1194, 1195.) Those statutes are not unconstitutional or discriminatory as between men and women, or otherwise. (*California Drive-in Restaurant Assoc.* v. *Clark*, 22 Cal.2d 287, 299 [140 P.2d 657, 147 A.L.R. 1028].) But the Clark case and the Farb case, *supra*, determine that the law does not preclude the employer and the employee from agreeing that tips, in whole or in part, shall belong to the employer, or that they shall be credited on account of compensation to be paid the employee. The ownership of tips received in the course of employment is a proper subject of contract as we have previously held. The appellants concede that ''the employer and the employee can agree or contract with respect to the disposition of tips or the credit of the same on wages due the employee from the employer.'' In the Clark case, *supra*, the Supreme Court said that a quoted contention made by appellant in that case ''does not mean that tips may not be considered wages under certain circumstances. . . . An employer may permit his employee to retain the tips and the arrangement may be that they shall be compensation.'' Likewise, the Supreme Court said in the Farb case, *supra*, at page 599:

''There is nothing essentially immoral in the contract itself whereby the employee agrees to work for a certain wage and to surrender all tips to his employer. The supreme court of Iowa (correctly, we think) approved an instruction to the effect that while the plaintiff, a bootblack, would be entitled to any gifts by way of tips, the employer might, if he could, prove an agreement on plaintiff's part to turn the tips over

to him. (*Zappas* v. *Roumeliote,* 156 Iowa 709 [137 N.W. 935].) If it is lawful, as between employer and employee, to provide for the ownership of tips into the possession of the latter, it can hardly be said that the patron's ignorance of it makes the contract unlawful.''

The following authorities support the validity of agreements between employers and employees, not in conflict with existing statutes, regarding the ownership and disposition of tips received by the employees for services which they were hired to perform. (*Zappas* v. *Roumeliote,* 156 Iowa 709 [137 N.W. 935] ; *Polites* v. *Barlin,* 149 Ky. 376 [149 S.W. 828, 41 L.R.A.N.S. 1217] ; *Harrison* v. *Kansas City Terminal Railway Co.,* 36 F.Supp. 434; *In re Farb, supra*; *Williams* v. *Jacksonville Terminal Co.,* and *Pickett* v. *Union Terminal Co.,* consolidated and determined together, *supra.* In the two cases last cited, notices were given to ''red cap'' employees by each terminal company requiring them to ''report daily to the undersigned the amounts received by you as tips or remuneration for such services.'' Agreements were subsequently made by the terms of which the ownership of the tips was determined and the terminal companies guaranteed the employees the full amount of minimum wages fixed by the Railroad Labor Act and the Fair Labor Standards Act. The terminal companies credited a portion of the tips received to the payment of their guaranteed minimum wages. Suits were brought by the employees to recover their minimum wages which they claimed were due regardless of the application of tips received. The companies answered and moved for summary judgments. The district court granted the motion and rendered judgment against plaintiffs. Those judgments were affirmed by the circuit court. On motion the United States Supreme Court granted writs of certiorari to review the records.

These cases appear to be determinative of the main issue in the present action. The court said in the case last cited:

''In the belief that the Act [Fair Labor Standards Act] required payment of the minimum wage without deduction of tips, the red caps, by their representative, Williams, brought an action against the terminal in the United States District Court for the recovery of unpaid minimum wages. . . .

''In businesses where tipping is customary, the tips, *in the absence of an explicit contrary understanding,* belong to the recipient. [Citing authorities.] Where, however, an arrangement is made by which the employee agrees to turn over the

tips to the employer, in the absence of statutory interference, no reason is perceived for its invalidity. The employer furnishes the facilities, supervises the work and *may* take the compensation paid by travelers for the service, whether paid as a fixed charge or as a tip. A tip to a red cap is compensation for service. It is customarily given and always expected when such service is rendered.'' (Italics added.)

In response to petitioners' contention that the retaining of tips by the red caps could not be deemed to be payment of minimum wages by the employers, the court said:

''Such a conclusion, however, does not foreclose a decision that in certain specific situations the so-called tips may not be in reality the employee's compensation for his services and therefore wages. . . .

''It, of course can make no practical difference whether the red caps first turn in their tips and then receive their minimum wage or are charged with the tips received up to the minimum wage per hour. . . . The employer was left free, in so far as the Act was concerned, to work out the compensation problem in his own way. Other courts are in accord with our view. [Citing authorities.]''

The foregoing case clearly holds that, in the absence of an agreement or statute to the contrary, tips are voluntary contributions or gifts from the donor to the employee and belong to the latter, but that the employer and employee may, by contract or mutual understanding, pass title to the tips, or a specified portion thereof, to the employer, to be paid to the latter in cash, or to be credited upon his obligation to pay wages. That case holds that, in the event it is agreed that a specified portion of the tips belongs to the employer, it is immaterial whether it is paid to him in cash or credited to his obligation to pay the employee a minimum wage.

■ The ownership and application of tips to payment of wages, in the absence of a statute to the contrary, are legitimate subjects of contract between the recipient and his employer. ■ It follows that the tips in this case, to the extent of the minimum wages due, were received by the waitresses for performance of duties incident to their employment, and that, by agreement or mutual understanding they became the property of plaintiffs and were credited by the waitresses upon plaintiffs' obligation to pay minimum wages. Such tips therefore became, to that extent, part of plaintiffs' gross receipts from sales of tangible personal property, and hence properly taxable under the Retail Sales Tax Act.

The statutes of California recognize the right of an employer to contract with his employee regarding the ownership or application of tips or gratuities by crediting them, or any part thereof, to wages due. (Lab. Code, §§ 351-356.) The cited Labor Code sections are based on Statutes of 1929, page 1971. Sections 351 and 352 of the Labor Code require the employer to post notice in his place of business of his claim to such tips, or portion thereof, and the extent to which such tips are to be applied in lieu of wages. Section 353 requires the employer to keep records of such transactions open to inspection. Section 354 makes it a misdemeanor for the employer to fail to comply with any of such provisions. ■■■ But the failure to comply with the procedure of giving notice or keeping the records does not render void the agreement with respect to the ownership or application of the tips. The statute merely punishes such omission as a misdemeanor. It does not appear in this case whether the required notice was posted or the records kept. ■■■ Since the tips were credited by the waitresses to the payment of minimum wages, in compliance with their agreement with plaintiffs, the latter should be estopped from asserting that they wrongfully failed to comply with the law and thereby defeat the state of taxes which would otherwise be a valid levy of assessment against them.

The *California Drive-in Restaurant Assoc.* v. *Clark, supra,* relied on by the appellants, does not apply to the facts of this case. That decision merely construed and upheld "Order 12-A," a rule of the Industrial Welfare Commission, which provided that "No employer may include tips or gratuities received by employees designated in section 1 hereof as part of the legal minimum wages fixed by said section of this Order." That was a mere administrative order. It appears to conflict with sections 351 and 352 of the Labor Code, the first of which provides in part that:

"Every employer or agent who collects, takes, or receives any gratuity or a part thereof, paid, given to, or left for an employee by a patron, *or who deducts any amount from wages due an employee on account of such gratuity, or who requires an employee to credit the amount, or any part thereof, of such gratuity against and as a part of the wages due the employee from the employer,* shall keep posted in a conspicuous place at the location where the business is carried on, . . . a notice, . . ." (Italics added.)

Order 12-A was not an issue in this case. It does not apply to the Retail Sales Tax Act. Moreover, the respondent in this case relies on a contrary rule which was adopted by the Board of Equalization, which was effective at all times involved in this suit. Rule 53, title 18, section 2003(c), California Administrative Code, provides:

"Where an employer requires his employees to turn over to the employer the amount of tips, or a portion thereof, received in connection with the serving of meals or drinks, the amount of such tips received by the employer will be considered as gross receipts from the sale of the meals or drinks and must be included in the measure of the tax.

"Amounts designated as service charges, added to the prices of meals, are a part of the selling price of the meals and, accordingly, must be included in the retailer's gross receipts subject to tax even though such service charges are made in lieu of tips and are paid over by the retailer to his employees."

The foregoing rule appears to be in accordance with the law as we have previously held. It appears to fit the facts of this case exactly. ▉▉ The trial court was entitled to take judicial notice of that rule of the Board of Equalization. (Code Civ. Proc., subd. 3, § 1875; Pol. Code, § 725.3; *Allen* v. *Industrial Acc. Com.*, 3 Cal.2d 214 [43 P.2d 787]; *Wood* v. *Kennedy,* 117 Cal.App. 53, 60 [3 P.2d 366].)

▉▉ The construction of the Retail Sales Tax Act by the Board of Equalization, with respect to the including of tips for which plaintiffs received credit on payment of minimum wages, as part of the gross receipts subject to retail sales tax, is not necessarily controlling, but is entitled to great weight in determining that issue. (*Coca-Cola Co.* v. *State Board of Equalization,* 25 Cal.2d 918 [156 P.2d 1].) In that case, it is said, at page 921:

"Although not necessarily controlling, as where made without the authority of or repugnant to the provisions of a statute, the contemporaneous administrative construction of the enactment by those charged with its enforcement and interpretation is entitled to great weight, and courts generally will not depart from such construction unless it is clearly erroneous or unauthorized." (Citing authorities.)

We think the construction of the board in this case is in accordance with the law.

Likewise, the case of *Herbert's Laurel-Ventura Corporation* v. *Laurel Ventura Holding Corporation, supra,* upon which

the appellants also rely, does not determine the issues in this case. That action involved merely the construction of a lease to determine whether tips received by waitresses in a café should be included in the total receipts to ascertain the amount of rental due the owner of the property by the terms of the lease. The lease provided that "Lessee shall pay to Lessor a minimum yearly rental of Six Thousand Dollars ($6,000.00) . . ., or shall pay to Lessor a sum equal to six per cent (6%) of the yearly gross receipts of the business, . . ."

The respondent, lessee, employed waitresses for the agreed compensation of furnishing them with meals and consenting that they "should retain all tips or gratuities left with them by patrons of respondent," but agreed that, if the total amount of their tips was less than $16.75 per week, the employer, lessee, would pay the waitresses the difference between the sum received in tips and said minimum wages. The lessee posted notices in the café, declaring that "All tips or gratuities given to our Car-Hops are retained by them as part compensation for their services." The court determined that "Each of them received tips in excess of the guaranteed sum; consequently *no deficit was ever paid.*" The waitresses in that case did not credit any portion of their tips to minimum wages due to them, as they did in the present case. Under such circumstances, pursuant to the agreement in that case, it was properly held that none of the tips belonged to the lessee, and it was therefore not required to include them, or any part of them, as receipts of its business for the purpose of ascertaining the amount of rental due under the lease. That case recognizes the right of employers and employees to contract with respect to the ownership of tips received. In distinguishing it from the Williams case, *supra,* and from other cases cited by the appellant, the court said:

"Those actions were brought by 'red caps' to enforce payment of wages after they had appropriated tips which *under their contract with the railroads were to be the moneys of the railroads* and be credited against the salaries of such employees. In those cases, the red caps collected the tips on behalf of their employers. Necessarily such moneys were the property of the railroads and such was the understanding at the time of their receipt by the red caps." (Italics added.)

We conclude that the tips received in the present case, to the amount of minimum wages of the waitresses, were the property of plaintiffs, a part of the gross receipts from sales

of tangible personal property, and therefore properly taxed by the State Board of Equalization.

The judgment is affirmed.

Peek, J., and Adams, P. J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 22, 1947. Carter, J., voted for a hearing.