[Civ. Nos. 18153, 18195. First Dist., Div. One. Aug. 10, 1959.]

R. J. DARTER, as Executor, etc., Respondent, v. CARSTEN MAGNUSSEN, Appellant.

(Two Cases.)

Robert H. Kroninger for Appellant.

Harris, Darter & Older and Cyril Viadro for Respondent.

BRAY, P. J.—Two consolidated appeals by defendant in a divorce action. One (No. 18153) is from an order denying defendant's motion for modification of the interlocutory decree. The other (No. 18195) is from an order appointing a receiver to sell real property as provided in that decree.

### QUESTIONS PRESENTED

1. Did the court have power by reason of Anna's death to modify the community property award to her in the interlocutory decree?

2. Did the court abuse its discretion in appointing a receiver?

3. Did the court err in refusing to strike from the interlocutory decree the award to plaintiff of attorney's fees?

### RECORD

On March 11, 1957, plaintiff Anna Magnussen was granted an interlocutory decree of divorce on grounds of defendant's extreme cruelty. Finding that the property was community property, the court awarded Anna three duplexes, a triplex and certain personal property. Defendant was awarded certain personal property and was ordered to pay $75 per month for support of the minor child.

The parties owned a community property ranch of some five acres. The disposition of this ranch was set forth in paragraph X of the decree, and will be discussed later.

No appeal was taken from that decree by either party.

Anna died April 28 (approximately 1½ months after the entry of the interlocutory decree). May 10, defendant moved to modify the interlocutory decree, principally by striking paragraph X and redistributing the ranch property on the ground of a material change in circumstances in that plaintiff had died. The court denied the motion. Defendant appealed. December 18, Darter as executor of Anna's estate, who had been substituted for Anna in the action, moved for an order appointing a receiver to sell the ranch "in satisfaction of the interlocutory judgment" and for an order directing payment of attorney's fees in connection with said motion. An order appointing receiver was made and denying Darter's request for attorney's fees. Defendant appealed. The denial of attorney's fees was not appealed.

### 1. Court Had No Power to Change Paragraph X of the Interlocutory Decree.

That paragraph provided that the ranch be sold within 90 days; "that the Court hereby reserves jurisdiction to

make any further order respecting the sale of said property, including the appointment of a commissioner, that the court may deem necessary or advisable." The proceeds, after payment of expenses of sale, "are hereby allocated as follows: 1. That the sum of $20,000 be paid to plaintiff herein as and for her share of community property and in lieu of alimony, to enable said plaintiff to reduce or discharge existing encumbrances on the real estate hereinabove awarded to her" (the duplexes and triplex hereinbefore mentioned). The balance of the proceeds after the payment of $4,000 attorney's fees to Anna and $4,000 attorney's fees to defendant, was to be paid defendant.

██ The trial court is without jurisdiction to modify an unqualified disposition of property rights made in an interlocutory decree of divorce except in accordance with the methods applicable to judgments generally (e.g. modification on appeal or under Code Civ. Proc., § 473). (*Leupe* v. *Leupe* (1942), 21 Cal.2d 145, 148 [130 P.2d 697].) An entirely different situation exists with respect to alimony. Section 139, Civil Code, provides for subsequent modification and termination. (*Id.*, p. 150; *Dupont* v. *Dupont* (1935), 4 Cal.2d 227, 228 [48 P.2d 677] ; *McClure* v. *McClure* (1935), 4 Cal.2d 356, 360 [49 P.2d 584, 100 A.L.R. 1257].)

██ The award of $20,000 was not alimony but an award of community property. The court said so in the decree. Even though it added "and in lieu of alimony" it said that the money was to enable plaintiff "to reduce or discharge existing encumbrances on the real estate hereinabove awarded to her." Defendant had remarried after obtaining a Nevada divorce. The court at the hearing stated its desire to avoid alimony because of the second wife. The provision in the decree reserving jurisdiction "to make any further order respecting *the sale* of said property" (emphasis added) did not purport to modify the property disposition. The court stated at the hearing: ". . . if not so sold, the Court reserves jurisdiction to make any appropriate order in the premises to *accomplish the sale thereof*, including the appointment of a commissioner if that becomes necessary or advisable." (Emphasis added.) It is obvious from the decree itself as well as from the statement of the court that the court's retaining of jurisdiction concerning the *sale* was without in any way affecting the finality of the property award.

Defendant contends that the court had no power to make a *present* disposition of the community property in the inter-

locutory decree, that the decree should have provided that the disposition would be effective only upon entry of the final decree, citing *Dowd* v. *Dowd* (1952), 111 Cal.App.2d 760, 765 [245 P.2d 339]; *Slavich* v. *Slavich* (1951), 108 Cal.App.2d 451, 457 [239 P.2d 100]; *Dallman* v. *Dallman* (1958), 164 Cal. App.2d 815, 819 [331 P.2d 245]. Those cases, however, were appeals from the interlocutory decree. In *Leupe* v. *Leupe, supra,* 21 Cal.2d 145, the court pointed out that it is fully established by the cases in this state that an immediate disposal of the property upon an interlocutory decree of divorce is within the jurisdiction of the trial court, although in cases dealing with direct appeals from interlocutory decrees it has been held that the trial court should not dispose of the community property immediately by such decree but should wait until such time as the marriage is absolutely dissolved. As there pointed out, when the interlocutory decree becomes final it is a conclusive adjudication and is res judicata with respect to awards of community property. Here the interlocutory decree had become final and the court had no power to strike the portion of the decree dealing with community property or to make any other disposition of it. As said in *Leupe* v. *Leupe, supra,* 21 Cal.2d at page 149, "The time for appeal having elapsed, the determination of property issues in the interlocutory decree became final and was no longer subject to modification . . ." If the disposition was erroneous, defendant's remedy would have been by appeal from the decree and not by this motion. Moreover, the death of Anna ended the interlocutory period. ▪ See *Wilson* v. *Wilson* (1946), 76 Cal.App.2d 119 [172 P.2d 568], where we said: "There can be no doubt at all that the trial court has jurisdiction to make a present disposition of the community property in the interlocutory decree, and that upon the decree becoming final, it measures finally the property rights of the parties." (P. 130.)

▪ The death of one of the parties to a suit for divorce abates the action and terminates the jurisdiction of the court to proceed with the action or to make any *further* determination of property rights, alimony, costs or attorney's fees. (*Bevelle* v. *Bank of America* (1947), 80 Cal.App.2d 333, 334 [181 P.2d 730].) However, the death of a party does not affect the court's power to take such action as may still have to be taken to enforce the property rights adjudicated by the interlocutory decree.

Section 132, Civil Code, provides in part that "The death of either party after the entry of the interlocutory judgment

does not impair the power of the court to enter final judgment. . . ." In *Gould* v. *Superior Court* (1920), 47 Cal.App. 197 [191 P. 56], the court in denying a petition for rehearing, in referring to its decision stated: "It was held that although the court may have lost jurisdiction to make a final decree, after the death of the husband, dissolving the marriage status, the property rights fixed by the agreement and confirmed by the interlocutory decree still remained in existence, and that as to them the court retained jurisdiction to enter the final decree in the manner specified in the interlocutory decree." (P. 204.) The rationale of the decision was the contract basis of the interlocutory decree in respect to the division of the property. And contract rights may endure beyond death. This view was later adopted in *Klebora* v. *Klebora* (1931), 118 Cal.App. 613, 618-619 [5 P.2d 965].

In *Leupe* v. *Leupe, supra*, 21 Cal.2d at page 150, the court stated it reserved judgment upon the question "of the effect of an immediate disposition of property in an interlocutory decree of divorce where there is a reconciliation before the final decree" until the issue was presented directly, and it was not in that case. Based upon that reservation defendant contends that the court intimated that it would not consider in the event of a reconciliation the disposition of community property in an interlocutory decree to be final. We find no such intimation in the opinion. Moreover, it should be pointed out that section 132, Civil Code, *supra*, expressly provides that the death of a party after the interlocutory decree does not prevent the entry of a final decree.

In general, " 'Even in the case of actions which do not survive death, it is well settled that death of the plaintiff after judgment in his favor and while the judgment stands does not abate the action or affect the validity of the judgment. [Citations.] Such a judgment becomes part of his estate and may be enforced by his representatives. [Citation.] This rule rests upon the theory that the original wrong or claim is merged in the judgment and that thereafter the controversy is over the judgment and not over the original wrong.' " (*Widener* v. *Hartnett* (1938), 30 Cal.App.2d 165, 167-168 [85 P.2d 925].)

And section 686, Code of Civil Procedure, provides: "Notwithstanding the death of a party after the judgment, execution thereon may be issued, or it may be enforced, as follows:

"1. In case of the death of the judgment creditor, upon the

application of his executor or administrator, or successor in interest; . . .''

Therefore, the property rights having been finally determined by the interlocutory decree, the court was not divested of jurisdiction to enforce its provisions.

### 2. *Receiver.*

Defendant's affidavit in opposition to the motion for appointment of a receiver set forth in addition to the fact of Anna's death, a claim that to allow a sale of the ranch would work a hardship on defendant. Defendant contends the court's reservation of jurisdiction must include the power to determine that no sale should be made, and that the court abused its discretion in appointing the receiver. However, as hereinbefore pointed out, the court did not reserve jurisdiction to change the property award nor to determine that no sale be made. The property rights were determined by the decree. No attack was made upon the decree either by appeal nor under section 473, Code of Civil Procedure. Defendant was seeking a determination that the farm need not be sold. The court had no discretion in the matter. It was its duty to enforce the terms of the decree. The motion to appoint a receiver was made pursuant to statutory authority to enforce and carry a judgment into effect. (See Code Civ. Proc., § 564, subd. 3.)

### 3. *Attorney's Fees.*

Paragraph X of the interlocutory decree provided that out of the proceeds of the ranch $4,000 be paid to Anna's attorneys for ''services rendered by them to plaintiff in the above entitled action, as well as for services rendered by them in an action brought by plaintiff and defendant against Claude Lindsay, et al.'' Defendant contends that the court erred in not striking this award from the interlocutory decree on the ground that the award covered services in a totally separate action. Section 137.3, Civil Code, authorizes an award of attorney's fees ''as may be reasonably necessary for the prosecution or defense of the action *or any proceeding relating thereto.*'' (Emphasis added.) An examination of the transcript of the proceedings at the end of the divorce trial shows that the parties stipulated that the court might fix the attorney's fees for services in both the divorce action and the Lindsay case. Defendant contends that his attorney had no authority to stipulate as he did, citing *Price* v. *McComish* (1937), 22 Cal.App.2d 92, 97, 99 [70 P.2d 978]. While the

circumstances here were quite different from those in the Price case, we deem it unnecessary to decide the question of the attorney's authority, for the reason that on other grounds the award cannot be attacked in this proceeding. Concerning it the court stated it considered the Lindsay case "to be in a way part and parcel of the services necessary in this divorce proceeding . . ." But more important is the fact that defendant did not appeal from the decree making such award. He cannot attack it collaterally. (*Wells Fargo & Co.* v. *City & County of San Francisco*, 25 Cal.2d 37, 40 [152 P.2d 625].)

Defendant's contention that the obligation to pay attorney's fees out of the fund to be obtained by sale of the ranch could not mature until the fund came into existence and that the court by reason of the death of Anna lost jurisdiction to bring that fund into existence, is unfounded. As we have heretofore shown, the court had full jurisdiction to enforce the terms of the interlocutory decree.

The orders are affirmed.

Wood (Fred B.), J., and Tobriner, J., concurred.