[L. A. Nos. 29550, 29551. In Bank. Apr. 18, 1969.]

RAE L. DECKER, Plaintiff and Respondent, v. OCCIDEN-
TAL LIFE INSURANCE COMPANY et al., Defendants
and Appellants.

Frank M. Benedict for Defendants and Appellants.

William J. Rathje and N. R. Samuelsen as Amici Curiae on behalf of Defendants and Appellants.

Labowe & Ventress and Joseph L. Ventress for Plaintiff and Respondent.

SULLIVAN, J.—In this action to recover amounts due and owing under a life insurance policy covering the unpaid balance on a contract of purchase and sale with the California Department of Veterans Affairs, defendant insurers appeal from a partial summary judgment (L.A. 29550) and from a summary judgment (L.A. 29551) entered in favor of plaintiff and against said defendants.

After decision by the Court of Appeal, Second Appellate District, Divison One, reversing the summary judgment and dismissing the appeal from the partial summary judgment, we granted a hearing in this court for the purpose of giving further study to the issues raised. Having made such study, we have concluded that the Court of Appeal has correctly disposed of the cause. Accordingly, the opinion of the Court of Appeal, authored by Justice Lillie and concurred in by Presiding Justice Wood and Justice Fourt, is adopted as and for the opinion of this court. Such opinion (with appropriate deletions and additions as indicated) is as follows:*

---

*Brackets together, in this manner [ ] *without enclosing material,* are used to indicate deletions from the opinion of the Court of Appeal; brack-

While married to plaintiff in August of 1955, Lloyd Decker purchased certain Culver City residential property through a contract of sale with the California Department of Veterans Affairs. With the latter's consent, title to the property was assigned by Decker and plaintiff to themselves as joint tenants. As provided by law, there was issued by the department upon Decker's application a Certificate of Life Insurance Home Protection Plan. Thereunder the defendant insurance companies obligated themselves to pay to the department, upon Decker's death, the balance still owing under his contract of sale provided he then had an insurable interest therein or was not otherwise in default. In February of 1963 plaintiff secured an interlocutory decree of divorce [by default] from Decker; by the terms thereof, after first reserving the right to grant other and further relief at the time of entry of the final decree, "The Court [found] that the real property located at 10738 Flaxton Street, Culver City, is community property and award[ed] the said real property to the plaintiff. . . ." No appeal was taken therefrom.

In July of 1963 (before entry of the final decree), Decker died. In February of 1964, upon plaintiff's ex parte application, the court made a *nunc pro tunc* order adding the language "effective upon entry of the final decree" to that portion of the decree above quoted. Plaintiff then instituted the instant proceeding to recover the amount owing on the contract which was insured against by defendants; the latter, by affirmative defense, contended that Decker's interest in the real property had terminated prior to his death by virtue of the interlocutory decree awarding the family residence to plaintiff. Finding against such defense, the trial court rendered summary judgment in plaintiff's favor wherein the unpaid balance was determined and judgment ordered against defendants in said amount. These consolidated appeals followed.[1]

ets *enclosing material* (other than editor's added parallel citations) are, unless otherwise indicated, used to denote insertions or additions by this court. We thus avoid the extension of quotation marks within quotation marks, which would be incident to the use of such conventional punctuation, and at the same time accurately indicate the matter quoted. In so doing, we adhere to a method of adoption employed by us in the past. (See *Chicago Title Ins. Co.* v. *Great Western Financial Corp.* (1968) 69 Cal.2d 305, 311 [70 Cal.Rptr. 849, 444 P.2d 481], fn. 2, and cases there cited.).

[1] In No. [29550] the appeal is from a partial summary judgment adjudging the liability of defendants under the subject policy but making no determination of the amount due thereunder. In No. [29551] the appeal is from the summary judgment, subsequently entered, which dis-

The Certificate of Insurance contains the following termination clause: "The insurance automatically terminates when the purchase contract is paid in full or canceled, or when the insured's interest in the property has terminated, voluntarily, or involuntarily, by operation of law or otherwise, or when the Department of Veterans Affairs terminates its Master Agreement with the Insurance Companies." ■ This clause is in keeping with the provisions of section 987.1, Military and Veterans Code, which authorizes the Department of Veterans Affairs to provide veterans with the opportunity of acquiring farms and homes upon contract terms therein specified.[2] Such opportunity of farm and home acquisition is but one of the several duties assigned the department since its succession to the responsibilities formerly vested in other agencies. (Mil. & Vet. Code, § 70.) The statutory program is essentially one for the benefit of veterans; hence, the contract may not be assigned without the permission of the Department which is also empowered to increase the interest rates to assignees who are not veterans. (Mil. & Vet. Code § 987.01.) In this latter regard, "That the assignee here is the former wife of the veteran is not a factor in determining the rate of interest to be charged. Divorced wives of veterans are given no special benefits by the Military and Veterans Code, at least not with respect to farm and home purchases." (25 Ops.Cal. Atty.Gen. 101, 103.) Any seeming harshness in the adverse determination we presently must make of plaintiff's claims should accordingly be weighed against the above statutory scheme to which we cannot blind ourselves.

■ If the insured's interest in the subject property terminated with the interlocutory decree, the insurance in question was also terminated. That such was the case is clearly established by the controlling decisions, particularly *Fritschi* v. *Teed*, 213 Cal.App.2d 718 [29 Cal.Rptr. 114] (hearing by the Supreme Court denied) which, in pertinent respects, is apposite. ■ Therein the court properly points out that a

poses (as hereinabove noted) of all matters requiring determination. Since it serves no useful purpose, the first numbered appeal must accordingly be dismissed.

[2]Section 987.1, *supra*, reads: "The department in each individual case may specify the terms of the contract entered into with the purchaser, but no property sold under the provisions of this article shall, voluntarily or involuntarily, by operation of law or otherwise, be transferred, assigned, encumbered, leased, let or sublet, in whole or in part, without the written consent of the department, until the purchaser has paid therefor in full and has complied with all the terms and conditions of this contract of purchase."

divorce court is empowered to render an interlocutory [decree] making immediate disposition of community property, citing *Leupe* v. *Leupe*, 21 Cal.2d 145, 148-149 [130 P.2d 697]. It is further therein pointed out that while some of the cases contain the ''hortatory expression that an interlocutory decree *should not* attempt a final property distribution'' (p. 723), such decisions were appeals from interlocutory judgments and, therefore, distinguishable. As here, there was no appeal from the interlocutory decree in *Fritschi*; hence, ''It is now conclusive, both because of lapse of time (*Leupe* v. *Leupe, supra*, 21 Cal.2d at p. 148) and because one of the parties died during the interlocutory period (*Darter* v. *Magnussen, supra,* 172 Cal.App.2d at p. 718 [342 P.2d 528]).'' (Pp. 723-724.) To the same effect where death of the husband ensued during the interlocutory period is *McClenny* v. *Superior Court,* 62 Cal.2d 140 [41 Cal.Rptr. 460, 396 P.2d 916], where the court noted that ''Although the death of one of the spouses in such a case abates the divorce action, the abatement relates to the status of the parties and not to the property rights theretofore adjudicated.'' (P. 144.)

The *Fritschi* case was also concerned with other problems identical to those raised in the instant proceeding. Thus, as here, the interlocutory decree included a provision for the granting of further relief at the time of the entry of the final decree, and it was unavailingly contended that such language should be construed as a reservation of the court's power to make an immediate disposition of the property in question. Again distinguishing the several decisions cited, the court concluded that the provision (for further relief) was mere surplusage, particularly in view of the fact that the dispositive provisions of the subject decree ''were cast in the present tense, declaring that each party was 'hereby' awarded designated items.'' (P. 725.) In our case, as noted earlier, the dispositive provision ''awards'' the subject residence to plaintiff; to suggest, as plaintiff does, that such award contains no language of immediacy, perilously approaches the frivolous. Finally, there is no merit to the contention that the *nunc pro tunc* order amended the decree and made it construable in plaintiff's favor for the purposes presently being discussed; the time for appeal having expired, the decree was no longer subject to modification except in accordance with the methods applicable to judgment generally (*Luepe* v. *Luepe, supra*, 21 Cal.2d 145, 149-150), and such later order also erroneously sought to correct a judicial, not a clerical mistake. (See 29 Cal.Jur.2d, § 99, p. 13.)

As her final contention, plaintiff makes the following argument: Although an interlocutory decree may be free from attack after it has become final, such fact does not create an immediate conveyance of the property therein disposed [of] to the exclusion of her husband. She cites *Vai* v. *Bank of America*, 56 Cal.2d 329 [15 Cal.Rptr. 71, 364 P.2d 247], for the proposition that a husband retains some control over the former community property until the entry of the final decree; but there, unlike our case, no disposition of the community property had been made and the case is otherwise distinguishable. She also asserts, quite understandably, that since her husband had a continuing obligation to support her and her children, such responsibility would be affected by the status of title to the family residence. Earlier, however, we made mention of the statutory scheme behind the controlling legislation. Since its passage, the Department of Veterans Affairs has enacted certain regulations for the proper administration of its duties in the acquisition of farms and homes for veterans. (Title 12, Cal. Admin. Code.) Section 310 relates to the life insurance here in suit; thus, all qualified applicants (for farm or home purchase) are required to apply therefor, the acceptability of the applicant will be determined by the underwriting companies (defendants here), and the effective and automatic termination dates are provided for. Section 316 reads as follows: *"Divorce or Legal Separation; Recognition of 'Purchaser.'*

"(a) Upon the entry of an interlocutory decree of divorce or entry of a decree of separate maintenance of a veteran contract purchaser and his wife, the department will recognize the nonveteran wife as the sole purchaser provided the veteran's entire beneficial interest is transferred to the wife and she agrees to: (1) actually reside in the home; (2) pay interest at the rate prescribed by the California Veterans Board for nonveteran assignees and the resulting increased installments; (3) apply for the Home Protection Plan.

"(b) Should the veteran retain his entire beneficial interest in the property after divorce or legal separation, he may continue as purchaser provided either he or his divorced wife continues to occupy the property." Counsel for defendants has represented to us that ":The Department, in keeping with the foregoing provisions of the Administrative Code, has adopted the practice for many years, upon entry of the interlocutory decree of divorce, to transfer the contract interest of the spouse, whose interest is lost by the decree, to the remain-

ing spouse *as of the date of the entry of the decree* at such time as the Department becomes aware of the entry of the decree.'' He then invokes the familiar rule that the contemporaneous administrative construction of the enactment by those charged with its enforcement will, unless clearly erroneous, be entitled to great weight by the courts. (*Anders v. State Board of Equalization*, 82 Cal.App.2d 88, 98 [185 P.2d 883].) Whether the provisions of section 316 were made known to plaintiff, we do not know; if they were, perhaps she simply refused to pay the increased installments required of the nonveteran. In any event, and in view of the peculiar legislation governing the instant transaction, we see no escape for plaintiff except continued compliance with the contract under the laws and regulations thereto applicable.

 [Since in the divorce case the trial court had the power to, and did, make an immediate disposition of the subject property and since such disposition, not having been challenged by either of the parties by an appeal from the interlocutory decree, is now final and conclusive upon them, the questions whether the court erred in so doing and what rule of construction should be applicable to ambiguous interlocutory decrees, are not before us in this case.] [ ]

[In L.A. 29550, the appeal is dismissed. In L.A. 29551, the summary judgment is reversed. Defendants shall recover costs on both appeals.]

Traynor, C. J., Peters, J., and Tobriner, J., concurred.

MOSK, J.—I concur in the judgment.

However, in merely adopting the Court of Appeal opinion the majority have failed to discuss or resolve two frequently recurring questions: (1) Does a trial court commit reversible error in ordering an immediately effective disposition of property in an interlocutory decree? (2) If not, where the language of the decree is ambiguous or silent on the question of intended timing, does the presumption favor immediate or delayed disposition? Proper resolution of this case, as well as necessary guidance to trial courts and the bar, compels a reply to these queries.

The first question is raised by implication, if not directly, in the instant case. In *Luepe v. Luepe* (1942) 21 Cal.2d 145, 149 [130 P.2d 697], this court determined that a trial court had the power—i.e., jurisdiction—to make an immediately effective disposition of property in an interlocutory decree,

though perhaps it "should not" do so. Based on that hortatory expression, *Gudelj* v. *Gudelj* (1953) 41 Cal.2d 202, 214 [259 P.2d 656], held that regardless of the trial court's jurisdictional power, it was reversible error to make an immediate disposition. So far as our subsequent pronouncements indicate, this is the present state of the law.

However, *Fritschi* v. *Teed* (1963) 213 Cal.App.2d 718 [29 Cal.Rptr. 114], on which the majority largely rely, cast considerable doubt upon the *Gudelj* holding. Granted that *Fritschi* purported to distinguish *Gudelj* and later "dissonant authorities," it went beyond that point and strongly implied that *Gudelj* was not an accurate statement of the law and that it was "out of harmony with common practices of trial judges and divorce counsel throughout the state." (*Id.* at p. 723.) This implication was fortified by the court's readiness to conclude, in the face of ambiguous language, that the trial court had in fact made an immediate disposition. A clear inference is that, contrary to *Gudelj*, the trial court involved in *Fritschi* not only acted within its power, but it acted properly—i.e., did not commit reversible error—in making an immediate disposition.

This court, by adopting the Court of Appeal opinion herein which relies on *Fritschi* for an identical conclusion, without mention of the *Gudelj* question, unfortunately perpetuates this confusion. It is now this court that implies an immediate disposition is proper—as I agree it should be—but without forthrightly stating as much. The *Fritschi* court, like the Court of Appeal below, was without power to do more than question the *Gudelj* holding; this court, however, can and should overrule it. I would hold that a trial court in its discretion may make an immediately effective property disposition in the interlocutory judgment of divorce if the intention to do so is expressly stated therein.

The second question must be answered, as a corollary to the first, to avoid unnecessary repetition of the type of ad hoc construction, based on nebulous terms such as "hereby" and "awards," to which the majority have been compelled to resort in this case. This court should clarify the law for the bar, future litigants and courts by articulating a simple, unambiguous rule of construction: absent the clear declaration of intent by the court to make an immediately effective property disposition, all property disposition contained in the interlocutory judgment becomes effective upon entry of the final judgment of divorce.

Even were a majority persuaded that a presumption should favor immediate disposition, however, we should unequivocally say so; for having some firm guideline would encourage courts and counsel to adopt more precise language in the preparation of interlocutory decrees and thus eventually the present uncertainties would be eliminated from this area of the law.

In short, I believe this court should resolve all the issues in the instant case in a manner calculated to avoid, rather than encourage, a repetition of this type of litigation. The majority, by adopting the Court of Appeal opinion, have regrettably foregone the opportunity to do so. They compound their omission by gratuitously adding to the opinion a paragraph in parentheses stating that rules of construction applicable to ambiguous interlocutory decrees "are not before us in this case." Such *ipse dixit* and cavalier dismissal of an issue ignores a record replete with the injection and discussion of the subject in every brief on file.[1] Appellate responsibility dictates responding to a proper query.

McComb, J., and Burke, J., concurred.

---

[1] I cite chapter and verse: (1) plaintiff's petition for hearing, p. 10; (2) defendant's answer to petition for hearing, pp. 1-2; (3) defendant's opening brief in the Court of Appeal, p. 9; (4) plaintiff's reply brief in the Court of Appeal, p. 9; (5) defendant's reply brief in the Court of Appeal, pp. 2-3; (6) amicus curiae brief, p. 5; and (7) in addition, the trial court discussed the *Gudelj* problem from the bench (Rep. Tr., p. 3).