116 Cal.App.3d 767 (1981)
172 Cal. Rptr. 331
In re the Marriage of NICOLE SANDRA and MALVERN FERGUSON JENKENS.
NICOLE SANDRA JENKENS, Appellant,
v.
MALVERN FERGUSON JENKENS, Respondent;
NICHOLAS J. GLEBOFF et al., Interveners.
Docket No. 24339.
Court of Appeals of California, Fourth District, Division One.
March 11, 1981.
*769 COUNSEL
Meir J. Westreich for Appellant.
No appearance for Respondent.
Lemkin, Schilling & Lemkin and John R. Schilling for Interveners.
OPINION
STANIFORTH, J.
This is a custody battle between the mother and the maternal grandparents of an 11-year-old boy. The mother petitioned for a writ of supersedeas to stay, pending appeal, a trial court order awarding the grandparents visitation with the child in their Seattle, Washington, home, restricting the mother's residence to Orange County, and compelling her to undergo therapy. That same order finds the mother a fit parent. We hold such an order presumptively invalid and order issuance of a writ of mandate to vacate it.[1]
The mother was awarded custody of the boy by an interlocutory dissolution decree in Washington in October 1969. In April 1970, the father died. The current interveners, the grandparents (Gleboffs) were not parties to the dissolution action. However, since then a dismal battle has been waged between the Gleboffs and their daughter (Jenkens) over the child. In June 1978, the mother allegedly placed the child permanently with the grandparents. However, in February 1979 the latter filed a petition in the Washington courts seeking custody, and the mother opposed that, kidnaped the child from school and took him to Orange County, in violation of a decree of the Washington court restraining removal from its jurisdiction. The Gleboffs brought the child *770 back to Washington in March 1979 via writ of habeas corpus, but then after a full probation investigation both in Washington and Orange County, a report was submitted which recommended custody in the mother but continued contact with the Gleboffs. That report stated it would be good for the child to continue contact with his grandparents, and also it would be in everyone's interests to mend the shattered family relationships here. The report recognized the destructive effect of the continuing legal battle on all parties and specifically recommended the counseling and visitation be voluntary, i.e., not court ordered.
The Washington courts then relinquished jurisdiction over the cause, and the Orange County court assumed it. The Gleboffs commenced a proceeding in August 1979 by a petition in the Orange County Superior Court for modification of the Washington interlocutory decree, to secure the Gleboffs' visitation rights. Jenkens attempted to interpose a jurisdictional challenge. She argued the dissolution action had been abated by the father's death, before the Gleboffs were ever parties, and now they have no standing to intervene in that action, 10 years after rendition of the interlocutory. She contended the Gleboffs could only bring a guardianship petition or seek removal of her parental rights. The trial court, however, assumed jurisdiction and made certain restraining orders.
In contempt of those orders, Jenkens fled with the child to Stateline, Nevada, where she lived, without contacting the grandparents, from November 19, 1979, to April 4, 1980. The Gleboffs then, purportedly exercising their right of Easter visitation, forcibly seized the child in Nevada and took him to Washington.
After a number of other court confrontations, the matter came to trial in Orange County in July 1980. The court then issued its order which found Jenkens is a fit parent; there is no detriment to the boy in being raised in her custody. Nevertheless, the court awarded the Gleboffs visitation, as follows: seven days in the winter, and forty-five days in the summer, plus the right to unlimited telephone and letter communication with the boy. The parties are ordered not to disparage each other to the child. Further, Jenkens must keep the Orange County probation department informed of her whereabouts and must get its approval of any residence and employment changes. She must also obtain family counseling. If she violates these orders, the trial court threatened to find detriment and give the child to the grandparents.
*771 In the most recent proceedings, a psychologist's report was obtained. That report recommends custody be given to the Gleboffs rather than the mother. The report disagrees with the earlier conclusions of the psychologist in the Washington proceedings. The Washington report found the mother fit, the child emotionally healthy and intellectually gifted, and recommended custody to the mother; but the Orange County psychologist did not like the mother, based apparently on her "nonconformist" score on a test plus her defensive attitude toward him in the interview. He found her immature and hostile and preferred her parents. Yet his report gives no specific indication of parental unfitness. The trial court declined to find, and indeed could not find on this record, that the mother is not a fit parent.
(1a) Petitioner states there is no evidence the child has any emotional problems or is anything but a healthy, well developed young man. However she further contends these court orders are making it impossible for her to control the child, who runs to his rich grandparents whenever she tries to discipline him, and who uses the court order as a lever to control his mother. Also the order, she argues, is a totally illegal burden on the mother's right to live where she chooses and to order her life, restricting her to California, forcing her to seek therapy, all with no basis in the first place to conclude she is an unfit parent. What is more, she contends, there is not even a pending proceeding to give a jurisdictional base to the alleged "modification" since the father died 10 years ago and there has been abatement of the divorce action.
Implicated here are Jenkens' rights to parent; her rights to privacy; her control over her own medical and psychological treatment; and also the jurisdictional question of the court's power to modify a custody decree after the noncustodial parent has died, in favor of nonparents not parties to the dissolution. Is such a parental custodian as Jenkens here, who has custody under a divorce decree rather than by virtue of widowhood, illegitimate birth, or adoption, subject to the control of the family law court although none of these other parents are?
There is ample authority on what happens when the custodial parent dies after a divorce decree. Some states hold the right to custody reverts automatically to the surviving parent, unless he or she is proved unfit; that is the majority rule and is followed in California. (See Annots. (1931) 74 A.L.R. 1352; (1953) 39 A.L.R.2d 258; Schammel v. Schammel (1894) 105 Cal. 258 [38 P. 729]; In re DeLeon (1924) 70 Cal. App. 1 [232 P. 738]; Bell v. Krauss (1915) 169 Cal. 387 [146 P. 874].) In *772 other states, the matter of custody is reopened or subject to reconsideration upon the death of the custodial parent. (The leading case is Jarrett v. Jarrett (1953) 415 Ill. 126 [112 N.E.2d 694], where an award of custody was made to the mother; child lived with maternal grandmother; mother died; trial court awarded custody to maternal grandmother as against father; the Illinois Supreme Court affirmed.)
However, we have found no authority on what happens when the noncustodial parent dies. The cases finding reversion to the surviving parent rest upon the premise that the custody in the surviving parent is not modifiable in a family law procedure. Thus, the cases which find reversion to the custody of the surviving noncustodial parent articulate the theory the child is not a permanent ward of the divorce court, but rather the court's interest is in determining the right to custody between the parents, an interest terminated upon the death of one of the parents. (E.g., Leclerc v. Leclerc (1931) 85 N.H. 121 [155 A. 249]; In re DeLeon, supra, 70 Cal. App.1; Matter of Allen (1912) 162 Cal. 625 [124 P. 237]; Bell v. Krauss, supra, 169 Cal. 387.) In In re DeLeon, supra, 70 Cal. App. 1, 6, the court reasoned: "Subdivision 2 of section 224 of the Civil Code does not, in and of itself, purport to make any disposition or authorize any orders in relation to minor children, but, relates simply to the question of consent, and in and of itself does not authorize any disposition of a minor child. Such disposition is governed by section 138 of the Civil Code. That section reads as follows: `In actions for divorce the court may, during the pendency of the action, or at the final hearing or at any time thereafter during the minority of any of the children of the marriage, make such order for the custody, care, education, maintenance and support of such minor children as may seem necessary or proper, and may at any time modify or vacate the same.' Whatever may be the terms of the order awarding the custody of a minor child to either of the parents in a divorce proceeding, it is evident from the wording of this section that so long as the child involved continues to be a minor there is no such thing as a final order pertaining to the custody of such child. The care and custody of the child can be inquired into at any time. This care and custody, however, can only be inquired into while the child in question is and continues to be, in contemplation of law, the child of the divorced parents. If, by any legal proceeding, this relationship is extinguished, the jurisdiction and power of the court in which the divorce proceedings were taken and had immediately terminate. The same reasoning would lead to the conclusion that when the parent to whom the custody of a child in a divorce proceeding is awarded dies, the order of award becomes immediately *773 of no force or effect, for the simple reason there is no one upon whom it can operate or anyone in existence capable of asserting any rights thereunder." (Italics added.)
There is also little authority dealing with jurisdiction to modify a California custody decree after death of one of the parties. In California, under former Civil Code section 4500 (now § 4350), marriage is dissolved by death of a party or a judgment of dissolution or nullity. Therefore the status of the marriage is moot after death of a party and cannot be then altered. (Greene v. Williams (1970) 9 Cal. App.3d 559 [88 Cal. Rptr. 261].) Nevertheless, also by statute, the court has the specific power, when a party dies after the interlocutory but before the final decree, to enforce the provisions of the interlocutory re property division and alimony, costs and fees. (Civ. Code, § 4514, subd. (d); Darter v. Magnussen (1959) 172 Cal. App.2d 714 [342 P.2d 528].) However the court may make no further determinations. (Id.)
Section 4600, dealing with custody, states when custody is in issue, the court may make appropriate orders during the pendency of the proceedings or at any later time. No case seems to have determined whether that provision, which confers traditional modification jurisdiction during the parents' joint lifetimes, also operates after death of one of them to permit a nonparty relative to seek modification. Such an interpretation denies equal protection of the laws to such parents, who have gained custody under a divorce decree, vis-a-vis all other kinds of parents whose custody could only be interfered with through petitions for guardianship, emancipation, or dependency.
We perceive no reason why such a parent should be treated differently from all the other kinds of enumerated parents and should be subject to recall before the family law court, even in the state where the decree was rendered, in a modification proceeding. The only ground to take the child from Jenkens is her unfitness, which the court declined to find. That issue could have been raised in a number of custody depriving actions, such as the one to appoint a guardian, or one to take the child from the parent's custody. (Prob. Code, § 1510 et seq.; Welf. & Inst. Code, § 300; see also Civ. Code, §§ 232, 239, re emancipation proceedings.) It is conceded the child cannot be taken from Jenkens without a finding of detriment, even under the Family Law Act. (In re B.G. (1974) 11 Cal.3d 679 [114 Cal. Rptr. 444, 523 P.2d 244].) Civil Code section 4600 reflects the parental preference rule.
*774 Civil Code section 4601 provides discretionary rights of visitation for nonparents, which, however, must give way to the paramount right to parent if the visitation creates conflicts and problems. (Adoption of Berman (1975) 44 Cal. App.3d 687 [118 Cal. Rptr. 804].) Civil Code section 197.5, the statute which was involved in Berman, provides mandatory visitation rights for the relatives of the deceased spouse. Berman nevertheless held those rights subordinate to the preservation of the parent/child family unit.
Here, the trial court has invaded that unit by granting extensive visitation to the maternal grandparents, who have no rights under section 197.5. The trial court's order rests only on the discretionary provisions of section 4601  a Family Law Act provision being used here in an action not properly brought under the Family Law Act.
(2) The critical importance in California of the right to parent has been affirmed and reaffirmed. (Stewart v. Stewart (1953) 41 Cal.2d 447 [260 P.2d 44]; In re Raya (1967) 255 Cal. App.2d 260 [63 Cal. Rptr. 252]; Odell v. Lutz (1947) 78 Cal. App.2d 104 [177 P.2d 628]; Shea v. Shea (1950) 100 Cal. App.2d 60 [223 P.2d 32]; Turner v. Turner (1959) 167 Cal. App.2d 636 [334 P.2d 1011]; Adoption of D.S.C. (1979) 93 Cal. App.3d 14 [155 Cal. Rptr. 406]; In re Carmaleta B. (1978) 21 Cal.3d 482 [146 Cal. Rptr. 623, 579 P.2d 514]; In re B.G., supra, 11 Cal.3d 679.) It only gives way upon a showing of parental unfitness, detrimental to the child's welfare. (In re T.M.R. (1974) 41 Cal. App.3d 694 [116 Cal. Rptr. 292]; In re Imperatrice (1920) 182 Cal. 355 [188 P. 48]; Adoption of D.S.C., supra, 93 Cal. App.3d 14; In re Carmaleta B., supra, 21 Cal.3d 482; In re B.G., supra, 11 Cal.3d 679.)
(1b) The issue so refined is: When the Legislature provided jurisdiction for continuing modification of child custody orders, did it intend such jurisdiction to impact the parenting right of the custodial parent, in a family law proceeding, after death of the noncustodial parent? The court in Jarrett v. Jarrett, supra, 112 N.E.2d 694, held under a continuing modification statute such as we have, the court has jurisdiction to reexamine the question at any time. That court (p. 695) expressly recognized that California courts had taken a contrary view and, significantly, the Illinois Supreme Court was not faced, as here, with the issue of the death of the noncustodial parent, followed by a third party modification procedure.
*775 California has at least eight separate procedures to obtain child custody. (In re B.G., supra, 11 Cal.3d 679, 696.) It has also been held, normally, the first court to take jurisdiction of that issue may determine it. (Greene v. Superior Court (1951) 37 Cal.2d 307, 311 [231 P.2d 821].) Accordingly, it may not be of great importance whether this matter began as a modification procedure or some other custody determining procedure. What matters is the basic necessary finding. In all the cases, the requisite finding is of parental unfitness. That factor is absent here. On what authority, then, may the court order counseling and grant third party visitation? None is cited; we know of none. Can we contemplate the possibility of a conditional finding of unfitness, i.e., one is a fit parent only if she has counseling, stays in California and lets the grandparents influence the child? Such a finding does not foster family stability and continuity for the child. This child should have a permanent and unconditional placement, with one fit to look after him, whose judgment is then to be trusted in the future with respect to such decisions as who shall get therapy, where the family unit shall live and who the child shall visit. Otherwise the government through the superior court will be running the family life of the parent and the child to a most intrusive degree. Such continuing supervision without a strong showing of child need is incompatible with the concept of the family as we have known it. Child placement decisions must take into account the law's limitations, incapacity to supervise interpersonal relations. (See Comment (1975) 63 Cal.L.Rev. 11, 251, fn. 77.)
We conclude there is no lawful basis shown for the trial court's order. The matter having been fully briefed and argued already, no further proceedings are necessary. Let a writ of mandate issue vacating the order of the court. The trial court shall award custody to the mother without limitations or conditions. The appeal is dismissed as moot. Petitioner shall have costs in this proceeding.
Brown (Gerald), P.J., and Work, J., concurred.
A petition for a rehearing was denied March 26, 1981, and interveners' petition for a hearing by the Supreme Court was denied May 6, 1981.
NOTES
[1] Although petitioner prayed for a writ of supersedeas, this court may issue the original writ it deems suitable, in this case mandamus, because the appellate remedy is not adequate. (See discussion in 5 Witkin, Cal. Procedure (2d ed. 1971) at pp. 3942-3944.)