[No. B007950. Second Dist., Div. Six. Aug. 26, 1985.]

In re the Marriage of PAULA RAE and DOUGLAS KENT FARRELL.
PAULA RAE FARRELL, Respondent, v.
DOUGLAS KENT FARRELL, Appellant.

## COUNSEL

Joseph Barry Fingleton and Howard R. Gottlieb for Appellant.

Liebmann & Dunlevy and William Q. Liebmann for Respondent.

## OPINION

**CANTER, J.**\*—Douglas Kent Farrell appeals an order increasing his spousal support obligation eightfold after he was unable to discharge an indebtedness secured by the residence his ex-wife received in the division of property. The trial court found that his failure to discharge the debt and the loss of interest earning potential suffered by her when the debt was paid out of escrow upon sale of the residence was a sufficient change of circumstances to warrant an increase in support. The court further found that the disparity between the wife's net income and her expenses necessitated the increase. We reverse.

### FACTS

On October 23, 1983, the parties appeared in court and entered into a written stipulation to an interlocutory judgment of dissolution of marriage. The stipulation, and later the judgment, distributed the community assets and liabilities and provided for spousal support in the sum of $100 per month and child support in the total amount of $600 for three children. Wife was awarded the family residence subject only to a first trust deed and a loan from her parents. A debt to the bank secured by a second deed of trust on the residence was to be paid by husband; and if wife sold the family residence, husband was to "secure a release on the home as security for these debts so the sale may be effected without [wife's] participation for this debt in any way." The judgment was thereafter prepared and was filed in court on February 23, 1984.

Meanwhile, on or about January 13, 1984, wife entered into a contract to sell the residence. When husband was informed of the pending sale, he

---

*Assigned by the Chairperson of the Judicial Council.

attempted to secure a release of the residence. His attempts were unsuccessful and at close of escrow the bank holding the second deed of trust was paid $48,794.94 from the proceeds of sale.

In May 1984 wife noticed a motion to increase her spousal support from $100 per month, which had been set by the October stipulation and the February interlocutory judgment, to an amount which added the payments husband had been making on the bank debt secured by the second deed of trust.

Wife testified that between the date the interlocutory judgment fixing support was filed and the commencement of the proceedings to increase support, she held the same job at the same rate of pay and her food, child care and other costs had not increased. Her apartment rent was $200 lower than the payment she had been making on the residence she sold. Her income and expense declaration, which was received in evidence, showed a shortfall of $692. Husband testified by way of his responsive declaration, which set forth his efforts to refinance the second trust deed obligation, substitute collateral to the bank and give wife a note for the amount paid in escrow. He had rejected her offer to repay the debt as spousal support.

The trial court rendered an intended decision by minute order which acknowledged that wife was seeking to have the $49,000 paid to her in the form of spousal support. The court noted the disparity between the wife's income and her expenses, noted the husband's ability to pay, and then determined that had the debt been paid, petitioner would have received $49,000 to invest to produce income to meet her needs. The court then considered the obligations, assets and lack of separate property of the wife and concluded that it would be eminently just and equitable if the husband were to pay the amount of the debt to the wife in the manner requested. The court ordered husband to pay an additional $700 per month in spousal support, continuing for 70 months after which it was to be reduced to its former $100 per month.

## CONTENTIONS

On appeal husband contends that the trial court modified a division of community property and obligations by changing the division into a spousal support award without consent of the parties and without sufficient change of circumstances to justify an increase in spousal support.

## DISCUSSION

The trial court retains jurisdiction to modify a spousal support award absent the parties' agreement to the contrary accomplished in writing or

stated orally in open court. (Civ. Code, §§ 4801, 4811.) Here, there was no such agreement, and the spousal support award of the interlocutory judgment remained subject to modification.

■ While the trial court has wide latitude in exercising its discretion to modify an award of spousal support, there must be demonstrated a material change of circumstances subsequent to the prior order. (*In re Marriage of Kuppinger* (1975) 48 Cal.App.3d 628, 633 [120 Cal.Rptr. 654].) In the absence of such a substantial change of circumstances, the court has no authority to modify a spousal support award. (*In re Marriage of Maunder* (1976) 57 Cal.App.3d 570, 573 [127 Cal.Rptr. 707].) ■ The facts and circumstances of each case determine whether a modification is warranted, and the exercise of the trial court's discretion in ordering modification will not be disturbed on appeal unless, as a matter of law, an abuse of discretion is shown. (*Philbin* v. *Philbin* (1971) 19 Cal.App.3d 115, 119 [96 Cal.Rptr. 408].)

In modifying the spousal support award, the trial court relied upon two factors: first, husband's failure to discharge the debt secured by a second deed of trust which deprived wife of investment return potential; and second, the disparity between wife's net income and her expenses and husband's ability to pay. Neither of those factors will support the modification as a substantial change in a party's circumstances since the last order.

## FAILURE TO DISCHARGE DEBT

■ The trial court concluded that husband's failure to pay the second trust deed indebtedness constituted a ground for modification, relying upon *In re Marriage of Clements* (1982) 134 Cal.App.3d 737 [184 Cal.Rptr. 756]. Such reliance is misplaced.

In the *Clements* case, the bankruptcy of the supported spouse, the wife, resulted in former community creditors seeking payment from the supporting spouse, the husband, of debts assigned the wife in the dissolution proceedings. The husband in that case was required to use income from which he was supporting the wife to placate those creditors wife had been assigned. The bankruptcy affected the income flow and was a sufficient change of circumstance to allow the husband to obtain a reduction in the support he was paying. In the instant case, there is no demonstrated nexus between husband's inability to discharge the second trust deed indebtedness and either the cash flow or expenses of either party. While the court may consider the property each party owns and their respective obligations as a factor (Civ. Code, § 4801, subdivision (a)(3); *In re Marriage of Morrison* (1978) 20 Cal.3d 437, 454-455 [143 Cal.Rptr. 139, 573 P.2d 41]), it is the

"economic relation" which must be the changed circumstance. (*In re Marriage of Clements, supra,* 134 Cal.App.3d at pp. 745-746:) Here there was no attempt to describe the impact to either party's economic situation: injury to wife, nor benefit to husband. The mere fact of the discharge of the indebtedness standing alone was an insufficient factor to constitute a change of circumstance.

 It has been held that when the award of support is not originally made after receipt of evidence regarding the condition of the parties, but is based solely upon stipulation of the parties, a mere expectation of one of the parties regarding a future change in income, which expectation is defeated, will constitute a change of circumstances justifying a modification. (*Bratnober* v. *Bratnober* (1957) 48 Cal.2d 259, 263 [309 P.2d 441].) The failed expectation, to qualify as a sufficient change of circumstance, must affect the party's earning capability or expenses. (*Ibid.*; see *In re Marriage of Jacobs* (1980) 102 Cal.App.3d 990 [162 Cal.Rptr. 649]; see also *Hester* v. *Hester* (1969) 2 Cal.App.3d 1091 [82 Cal.Rptr. 811].) In the present case, the trial court surmised that wife could have invested the funds to produce income. Wife offered no proof, however, that such had been her intention nor did she demonstrate a plan as to the kind of investment expected or its rate of return. She could as easily have used the money to purchase another residence or for a myriad other purposes, not affecting her income needs.

 A change of circumstances must be shown whether the original award arises from an evidentiary hearing or by stipulation. (*In re Marriage of Hentz* (1976) 57 Cal.App.3d 899 [129 Cal.Rptr. 678].) "The court, by including the stipulation in its own decree, presumes that the parties arrived at a fair support award, after arm's-length negotiations, that took into consideration all of the circumstances as they then existed. The court thereafter should not permit a party to change this contractual arrangement, absent changed circumstances, as it would allow a party to repudiate and change a legal contract for no reason at all." (*Id.,* at p. 901.) Here, there was no change of circumstance for either party, except wife's decrease in rent. Any unrealized expectation of the parties remained undisclosed and unproven; its economic impact discernible only by speculation.

The trial court's order of an additional $700 per month spousal support for an additional 70 months to return thereupon to its earlier level of $100 amounts to the approximately $49,000 loss wife incurred in house sale. Husband owes the wife that amount, as is established by the agreement between them. There was, however, no "counterbalancing cancellation" of husband's indebtedness to the wife for failure to discharge the debt. Indeed, the court's order could not do so, "because the trial court was

without jurisdiction to modify an unqualified disposition of property rights in an interlocutory decree of divorce, except in accordance with methods applicable to judgments generally . . . ." (*In re Marriage of Maunder, supra,* 57 Cal.App.3d at p. 573.) The husband's contractual obligation would not be suspended during the period of increased spousal support nor would it be extinguished at the termination thereof. Seventy months later, the husband would still be indebted to the wife for the entire amount of the second trust deed obligation she discharged in the escrow. The division of assets and liabilities cannot be modified after it has become final unless there is an explicit reservation of jurisdiction to do so. (See *In re Marriage of Brown* (1976) 15 Cal.3d 838, 851, fn. 13 [126 Cal.Rptr. 633, 544, P.2d 561, 94 A.L.R.3d 164]; *Decker* v. *Occidental Life Ins. Co.* (1969) 70 Cal.2d 842, 848 [76 Cal.Rptr. 470, 452 P.2d 686].) There was no such reservation of jurisdiction in this case. Any other rule of law would reduce finality of decision in dissolution cases to an illusion.

The effect of the trial court's order was to convert a property division obligation into spousal support. The case of *In re Marriage of Cobb* (1977) 68 Cal.App.3d 855 [137 Cal.Rptr. 670], is persuasive. There the wife sought to belatedly share in her husband's pension which had been omitted from the interlocutory judgment. Since that judgment was final, the trial court had no jurisdiction to modify it with respect to property rights. Instead, the court increased the wife's spousal support from $1 per month to $484.10 per month, the exact amount of what the wife's interest would have been. The court held that a reversal was required because it was apparent that the spousal support increase was not based on consideration of the parties' needs and abilities to meet those needs. (*Id.,* at pp. 860-861.) The same considerations compel reversal here. A court may not engage in judicial alchemy by transforming a common debt into a support obligation.

### FINANCIAL ABILITY

█ Nor can the modification be justified upon the ground that there existed a disparity between the wife's income and expenses.

At the hearing, wife testified unequivocally that her income had remained constant in the four-month period between the filing of the interlocutory judgment and the hearing date. In that short time frame, all her expenses had remained the same, save housing costs, which had declined. It was this period, the time between the previous order (the filing of the interlocutory judgment) and the hearing date, for which it was critical for wife to demonstrate a change in circumstances to justify modification. No evidence of any change of circumstances of either party, except the decline in wife's housing costs, which was of benefit to her, was brought out at the hearing.

Husband did not file a financial declaration, and the only information offered relating to his income and expenses was a group of checks showing his gross business receipts. No change in his financial situation was demonstrated. Wife cannot, therefore, rely upon *In re Marriage of Hoffmeister* (1984) 161 Cal.App.3d 1163 [208 Cal.Rptr. 345], wherein an increase in support was justified upon husband's greatly increased income even though wife's financial condition had not changed but remained inadequate to support her needs.

In using the disparity between the wife's income and expenses as a principal factor in the modification, the court was considering a circumstance which had not changed. That constituted an unwarranted collateral attack upon the judgment four months earlier. (*In re Marriage of Mulhern* (1973) 29 Cal.App.3d 988 [106 Cal.Rptr. 78].) ■ A motion for modification cannot be used to attack a judgment which had been subject to direct attack by motion for new trial or appeal, *unless circumstances change meanwhile.* Otherwise, decrees in dissolution cases would never be final and the litigants "are entitled to attempt, with some degree of certainty, to reorder their finances and life style in reliance upon the finality of the decree." (*Id.*, at p. 992.)

■ The change of circumstances rule provides legal protection to marital settlement agreements. (*In re Marriage of Hentz, supra,* 57 Cal.App.3d at pp. 901-902.)

The order increasing spousal support from $100 per month to $800 per month is reversed. Each party is to bear his own costs on appeal.

Gilbert, J., and Abbe, Acting P. J., concurred.