Filed 2/5/14  Marriage of Torok CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| In re the Marriage of SCOTT and LAWANDA TOROK. | |
| SCOTT TOROK,<br><br>        Appellant,<br><br>    v.<br><br>LAWANDA TOROK,<br><br>        Respondent. | C070894<br><br>(Super. Ct. No. CVFL991964) |

Scott Torok appeals from a court order denying his motion to modify or terminate spousal support and ordering him to pay Lawanda Torok's attorney fees.  Scott contends the trial court failed to consider the relevant factors in determining spousal support. Scott's contention is not supported by the record.  Scott also claims the trial court abused its discretion in not finding changed circumstances, refusing to impute income to Lawanda, and ordering him to pay a portion of Lawanda's attorney fees.  On this record, we conclude there was no abuse of discretion.  Accordingly, we affirm the order of the court.

FACTUAL BACKGROUND

Married in 1980, Scott and Lawanda obtained a judgment dissolving their marriage in February 2001 (dissolution was made effective June 6, 2000). As part of that judgment, the trial court found Lawanda's gross monthly income to be $800, and Scott's to be $3,925. Pursuant to Family Code[1] section 4320, the trial court further found "(1) [Lawanda] has a minimum earning capacity of $800.00 per month; she has one more year of school before she can get her degree in early childhood education; she would need additional time before she obtains her teaching credential; or she could go into daycare. [Lawanda] has also been a manager in wholesale sales in the past; [¶] (2) [Lawanda]'s present or future earning capacity has not, by her testimony, been impaired by periods of unemployment due to domestic duties of the marriage." Based on these findings, the court ordered Scott to pay Lawanda spousal support totaling $450 each month until she "dies or remarries, or further order of the Court, whichever occurs first."

*2009*

In April 2009, Scott filed a motion to modify or terminate spousal support. In support of his motion, Scott advised the court he had retired and Lawanda would now be receiving her community share of his retirement benefits. Accordingly, he argued, she no longer needed spousal support. Scott further argued, because he was retired, his income had decreased, and he could no longer afford to pay spousal support.

Along with his motion, Scott filed an income and expense declaration, in which he indicated his average, gross monthly income was $6,750; though he received only $2,859 the month prior to filing his declaration he received an additional $17,000 "after taxes for retiring early." Scott further indicated he had $12,000 in liquid assets, was losing $250

---

[1] Undesignated statutory references are to the Family Code.

2

each month on a rental property, and had monthly expenses totaling $3,128. Scott also noted he was living with his "fiancé[e]" and she shared some of the household expenses.

Lawanda opposed the motion to modify or terminate spousal support. She asked the court to maintain the current order of support or, alternately, increase the order to $600 each month. In support of her opposition, Lawanda noted Scott's gross monthly income had nearly doubled since 2009. She also noted Scott was living in his girlfriend's home (so likely was not actually paying rent) and had taken an early retirement.

On the other hand, Lawanda recently lost her job as a cook with the local school district after she was convicted of felony driving under the influence. Her only income derived from spousal support and unemployment benefits, which were soon to expire. Lawanda's average gross monthly income was $1,212. Lawanda lived in a mobile home, she had no car, she owned no real property, and she had no savings. Her monthly expenses totaled $1,540.

In October 2009, the trial court denied Scott's motion. In support of its decision, the trial court found that since the dissolution, Scott was able to maintain the marital, middle class standard of living but Lawanda was not. The court also found Scott "accumulated significant assets," while Lawanda had not. The court concluded Scott "ha[d] the ability and earning capacity to continue to pay permanent spousal support at a rate of $450.00 per month."

The court further ordered Scott's attorney to prepare a qualified domestic relations order, dividing Scott's retirement benefits from NASA. Accordingly, Lawanda would receive $1,107 each month as her community share of Scott's retirement benefits in addition to the $450 she would receive each month in spousal support. Finally, the court ordered Scott to pay to Lawanda $8,856 in "retirement arrearages."

The court's order included a *Gavron*[2] notice:  "It is the goal of this state that each party must make reasonable good faith efforts to become self-supporting as provided by . . . section 4320.  The failure to make reasonable good faith efforts may be one of the factors considered by the court as a basis for modifying or terminating support."

### *2010*

In February 2010, Scott filed a motion seeking to clarify the court's order regarding division of his retirement benefits and asking the court to order Lawanda to "apply for at least 5 jobs every two weeks and provide [Scott] with proof of such applications at least once a month until she gets a job and becomes self supporting." The trial court denied Scott's motion and ordered him to sign the "Stipulated Domestic Relations Order regarding the division of the Parties' interest" in Scott's retirement benefits.

In September 2010, Scott filed another motion to modify spousal support.  That motion was dropped after "the court advised counsel that [Lawanda] was still on probation."  Scott agreed not to file another motion to modify spousal support until Lawanda was no longer on probation and was able to expunge the 2006 felony conviction from her record.

Then, in November 2010, Scott filed a motion asking the court to order Lawanda to submit to a vocational evaluation.  Lawanda opposed the motion.  In support of her opposition, Lawanda said she was convicted of felony driving under the influence in June 2006.  As a result of her conviction, Lawanda was struggling to find work.  She reported making numerous efforts to find work in the food service industry, where she had the most experience.  Lawanda indicated she completed applications and participated in approximately five interviews but being a 58-year-old woman on felony probation was

---

[2]  *In re Marriage of Gavron* (1988) 203 Cal.App.3d 705.

4

making it difficult to obtain employment. She said she would remain on probation until June 2011.

Lawanda further declared that because she was unable to find employment and her unemployment benefits had expired, she moved to Fresno, California, to provide daycare for her grandchild.[3] In Fresno, Lawanda lived in a three bedroom condominium owned by her daughter. In exchange for Lawanda's daycare services, her daughter reduced Lawanda's monthly rent obligation by $700. In sum, Lawanda argued, her circumstances remained dire.

On November 22, 2010, following argument, the trial court denied Scott's motion without prejudice.

## *2011*

On August 11, 2011, Scott filed another motion to modify or terminate spousal support; he also asked the court to order Lawanda to submit to a vocational evaluation. Lawanda opposed the motion. Following a short cause hearing, the court ordered Lawanda to submit to a vocational evaluation and the issue of spousal support was set for trial. In the interim, the court ordered Scott and Lawanda to "file briefs regarding . . . Section 4320 factors and changes since entry of the Judgment."

## *2012*

### *Trial on Motion to Modify or Terminate Spousal Support*

A trial on Scott's August 2011 motion to modify or terminate spousal support was held on February 1, 2012. Patrick Sullivan, the vocational expert who completed Lawanda's vocational evaluation, testified Lawanda had no college degree, no computer skills, and did not even own a computer. He further testified that, at her age, Lawanda would not benefit from "protracted" vocational training, but with her skill set, Lawanda

---

[3]     Lawanda's job experience was primarily in food service and daycare.

was capable of earning more than minimum wage. Sullivan acknowledged Lawanda's felony conviction could limit Lawanda's ability to find a job as a childcare provider, but the conviction did not make her "unemployable." In his opinion, Lawanda was currently "underemployed."

Lawanda testified that she lost her part-time job as a cook in the local school district after she was convicted of driving under the influence. Following her conviction, Lawanda served one year in county jail. At the time of trial, Lawanda was still living in the condominium owned by her daughter. Her "job" continued to be caring for her grandson, for which she received a $700 reduction in rent. Lawanda knew her chances of finding work would increase if she could have her conviction "expunged," but she had not started that process.

Lawanda further testified that, during marriage, she and Scott shared a middle class lifestyle. Lawanda was the parent with primary responsibility for the parties' children, while Scott commuted to and from his job at NASA. After separation, Lawanda moved to an apartment, then to a mobile home where she lived by herself until she moved to Fresno.

At the time of trial, Lawanda suffered from high blood pressure and high cholesterol. Because she had no health insurance, Lawanda's medical conditions were untreated and would remain untreated until she could find a free clinic to assist her. Lawanda's income was limited to the $1,107 she received each month as her share of Scott's retirement benefits, the $700 reduction in rent she received in exchange for caring for her grandson, and the $450 she received each month as spousal support, for a total monthly income of $2,257. When she turns 62, Lawanda will be entitled to receive Social Security benefits totaling $500 a month (she was 59 at the time of trial).

According to her income and expense declaration, at the time of trial, Lawanda's monthly expenses totaled $3,190. Lawanda owed her attorney $840 and, including her cash and savings accounts, she had a total of approximately $2,300 in assets.

According to Scott's income and expense declaration, at the time of trial, Scott's average gross monthly income was $2,920. He had $500 in his checking and savings accounts, and personal property totaling $15,000. Scott was still living in his girlfriend's home[4] and his monthly expenses, including rent, totaled $2,905. Scott did not owe his attorney any money, but had already paid $11,555 in attorney fees. Scott had not worked since January 2009, when he took an early retirement from NASA.

In addition to the ruptured disk he suffered in 2009, Scott testified that in December 2010, he went to the doctor because he was "running out of breath," which resulted in Scott having a "procedure" on his heart. Following that procedure, Scott continued to struggle with physical activity. In Scott's opinion, he was physically unable to work.

Scott testified that, since the hearing in 2009, his financial condition had deteriorated. His "Thrift Savings" account had decreased from $62,000 to $15,000.[5] According to his testimony, Scott paid $15,000 to Lawanda and the rest of the money was used to pay medical and legal bills. In addition to depleting his savings, Scott also sold his car and his boat to pay medical bills (though he still owned a small aluminum boat and drove a truck). At the time of trial, Scott had outstanding medical bills totaling

---

[4]     This is the same woman he referred to as his "fiancé[e]" in 2009.

[5]     We note Scott's testimony is inconsistent with the documentary evidence in the record on appeal. In his August 2009 income and expense declaration, Scott did not disclose any savings account with a balance of $62,000. Then, in the income and expense declaration Scott filed with the trial court in July 2011, Scott disclosed his "Retirement Thrift Savings" account and declared the balance to be $15,000. Scott's December 2011 income and expense declaration reflects the same $15,000 balance.

approximately $4,454, and would never receive Social Security benefits. Scott did, however, have medical insurance through the Government Employees Health Association.

At the time of trial, Scott also owned a rental property, which he rented to his adult daughter, that was worth less than he paid for it and was now costing him $200 each month (in 2009 that same property was costing him $250 each month). Scott also owned a truck, which increased his monthly gas expenses from 2009, and he paid the monthly cell phone bills for his adult daughter and his girlfriend. Scott was also the sole owner of a time-share in Squaw Valley, property he previously owned with Lawanda. Scott paid approximately $600 each year for that property.

### Trial Court's Ruling

Following argument, the trial court issued the following ruling: "The Court finds the testimony to be that [Lawanda] was on probation until November of 2011, therefore, she wasn't even eligible to apply for an expungement until that time, which was after the time of the filing of the motion.

"The Court finds that looking through what -- that hearing the evidence and looking at the documents that counsel asked me to take judicial notice of, there's been no showing of change of circumstance to change the order.

"There was a request for a Statement of Decision with respect to the 4320 factors. The Court finds it's not necessary to state that because I'm finding that there's no change of circumstance.

"There is also a request for a Statement of Decision with respect to . . . Section 4322. The Court finds that [Lawanda] does not have sufficient assets for proper support, therefore, the Court makes an oral statement of decision which I'm permitted to do because this hearing lasted less than one day and less than eight hours; that 4322, she cannot -- doesn't apply in this case.

8

"With respect to attorney's fees, the Court does find that there is -- [Lawanda] does have the ability to make payments toward attorney's fees.

"[¶] . . . [¶]

"The Court does find that in order to give equal access to legal representation, and based on the Income and Expense Declarations the Court has considered, [Scott] has the ability to pay $1,500 towards [Lawanda's attorney] fees; a hundred dollars a month starting on April 1st, 2012."

A written order followed: "The court finds that based on the testimony of the parties, witnesses presented, and the evidence admitted, the court finds that there has been no showing of a change in circumstances to justify a change of the current spousal support order. The court hereby denies [Scott's] request to terminate the current spousal support order filed on February 13, 2001.

"With regard to [Scott's] request for a statement of decision, the court finds that this hearing lasted less than one day, and less than eight hours, and hereby makes an oral statement of decision. The court further finds that it is not necessary to state its decision regarding all of the factors under . . . section 4320 because the court has made a finding that there are no changes of circumstances to change the current order of spousal support. Further, with respect to . . . section 4322, the court finds that [Lawanda] does not have sufficient assets for proper support, and that . . . section 4322 does not apply in this case.

"The court makes no finding that [Lawanda] is underemployed. The court makes no decision to impute income to [Scott]. The court finds that since 2009, there has been no change of circumstances."

DISCUSSION

# I

### *The Statement of Decision*

Scott begins his first argument with the following heading: "It is an abuse of discretion not to apply all relevant factors under . . . section 4320." The argument made below this heading, however, includes a claim the trial court "refused to make a statement of decision regarding all . . . section 4320 factors." Neither of these claims has merit.

Following trial the court issued an oral statement of decision, wherein the court found there was no change of circumstances warranting a modification of spousal support. The court noted a statement of decision was requested on each of the section 4320 factors, but said such a detailed statement was not required. The trial court was correct.

An oral statement of decision was permitted because the trial lasted a single day and did not exceed eight hours in duration. (Code of Civ. Proc., § 632.) Moreover, in issuing a statement of decision, a trial court need do no more than state the grounds upon which the decision rests. (*In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 50 (*Schmir*).)

Here, the trial court's decision was to deny Scott's request to modify spousal support. The court's decision rested solely on the ground there was no change of circumstances. If Scott wanted a more detailed ruling, he was obligated to raise his objection and make his request to the trial court. (*Schmir*, *supra*, 134 Cal.App.4th at p. 49; Code of Civ. Proc., § 634.) He did not. Scott's failure to object at trial precludes him from raising this objection on appeal. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133-1134.)

Scott also claims the trial court failed to apply all relevant factors under section 4320. He argues by "refusing to set forth a Statement of Decision on . . . Section

4320 factors the lower court ignored the relevant circumstances to determine if a modification of support should be ordered." Scott's claim is not supported by the record.

We presume the trial court executed its duty to interpret and apply the law correctly, unless the record indicates otherwise. (See Evid. Code, § 664 [it is presumed official duty has been regularly performed]; see also *Brewer v. Simpson* (1960) 53 Cal.2d 567, 583 [we must adopt all inferences in favor of the judgment].) Here, the trial court ordered Scott and Lawanda to "file briefs regarding . . . Section 4320 factors and changes since entry of the Judgment." While the trial court said it was not necessary to state each of the section 4320 factors on the record, we cannot infer from the court's statement that the court failed to *consider* each of the factors. On the contrary, we must infer the court did consider the section 4320 factors in reaching its decision because that is what the law requires. The record does not suggest otherwise.

## II

### *No Changed Circumstances*

Scott argues the trial court abused its discretion by not finding changed circumstances. On this record, there was no abuse of discretion.

"While the trial court has wide latitude in exercising its discretion to modify an award of spousal support, there must be demonstrated a material change of circumstances subsequent to the prior order. [Citation.] In the absence of such a substantial change of circumstances, the court has no authority to modify a spousal support award. [Citation.] The facts and circumstances of each case determine whether a modification is warranted, and the exercise of the trial court's discretion in ordering modification will not be disturbed on appeal unless, as a matter of law, an abuse of discretion is shown. [Citation.]" (*In re Marriage of Farrell* (1985) 171 Cal.App.3d 695, 700.)

11

## A.

### *Imputing Income to Scott*

Scott contends his income changed after the trial court's 2009 order. He argues the court's failure to impute him with income in the 2012 order is evidence of his changed income.[6] We are not persuaded.

Contrary to Scott's claim, the trial court did not impute income to Scott in its 2009 order. The court made no findings regarding the amount of Scott's or Lawanda's monthly income, the court found only that Scott "has the ability and earning capacity to continue to pay permanent spousal support at a rate of $450.00 per month." Scott argues that by phrasing the order this way, the court "impliedly imputed" him income of $6,750 per month. However, Scott offers no legal authority to support the claim we should infer the court imputed him with income in 2009 based solely on the court's use of the phrase: "ability and earning capacity to continue to pay."

Moreover, even if the trial court did impute income to Scott in 2009, the court's decision not to impute income to him in 2012 does not prove a material change in circumstances warranting a reduction in spousal support.

Finally, we note that based on Scott's income and expense declarations filed in 2009 and 2012, Scott's monthly income increased. In 2009, Scott's average monthly income was $6,750, but his income the month prior to filing his income and expense declaration was only $2,859. (Presumably, this dramatic change in income reflects Scott's retirement from NASA.) At the time of trial in 2012, Scott's average monthly

---

[6]     Scott refers to the trial court's 2010 order, but his record citation refers this court to the trial court's order filed on October 6, 2009, wherein the trial court denied Scott's motion to modify spousal support and ordered Scott to pay to Lawanda her share of his retirement benefits. The only order issued by the trial court in 2010 is a minute order wherein the trial court denied Scott's motion for a vocational evaluation of Lawanda. We assume Scott intended to reference the court's October 6, 2009, order.

income, and the income he received the month prior to filing his income and expense declaration, increased to $2,920.

## B.

### *Scott's Ability to Work*

Scott further contends the trial court abused its discretion by refusing to find his inability to work to be a changed circumstance. Again, on this record, there was no abuse of discretion.

Scott was not working in 2009 when the prior order was issued and he was not working in 2012. Scott argues he could not work due to a heart condition, and this was a changed circumstance from 2009. This argument is not supported by the record.

The only evidence admitted at trial that Scott could not work in 2012 due to a heart condition was Scott's own testimony. The trial court was not obligated to find Scott's self-serving testimony credible. Moreover, the trial court made no finding Scott was physically unable to work due to a heart condition. Accordingly, Scott's claim he established an inability to work due to a heart condition is not supported by the record.

Furthermore, Scott testified he took an early retirement from NASA in 2009 because he was unable to work due to a ruptured disk in his spine. Thus, by his own testimony, one injury prevented Scott from working in 2009 and another prevented him from working in 2012. Assuming the trial court believed Scott's testimony, he established only that his injury changed, not his inability to work. Accordingly, there was no changed circumstance regarding Scott's ability to work.

## III

### *Imputing Income to Lawanda*

Scott claims the trial court abused its discretion in refusing to impute income (or earning capacity) to Lawanda because, Scott argues, Lawanda refused to look for a full-time job. We are not persuaded.

In setting spousal support, the trial court must consider certain factors, including the earning capacity of the supported spouse, and the statutory goal that the supported party becomes self-sufficient within a reasonable time. (§ 4320, subds. (a), (*l*).) If a party "is unwilling to work despite the ability and the opportunity, earning capacity may be imputed. [Citation.] [The] motivation for not pursuing income opportunities is irrelevant." (*In re Marriage of LaBass & Munsee* (1997) 56 Cal.App.4th 1331, 1338.) The party asserting earning capacity should be imputed has the burden of proof. (*In re Marriage of Henry* (2005) 126 Cal.App.4th 111, 120.)

In its ruling, the trial court expressly refused to impute income to Lawanda but did not recite factual findings in support of that decision. We must, therefore, presume the trial court made the factual findings necessary to support its decision. (Code of Civ. Proc., § 634.) Thus, we presume the trial court found Lawanda lacked the ability to obtain full-time employment or the opportunity, or both. (*In re Marriage of LaBass & Munsee*, *supra*, 56 Cal.App.4th at p. 1338 [impute income only if party has the ability and opportunity to earn].)

Here, there was sufficient evidence to support a finding that even if Lawanda had the *ability* to work full-time for minimum wage, she lacked sufficient *opportunity*. As noted by the trial court, Lawanda was still on felony probation when Scott filed his motion, and even the expert agreed Lawanda's probationary status made it more difficult for her to find employment. Additionally, as noted by the trial court, Scott had already withdrawn a motion to modify or terminate spousal support because Lawanda was still on probation and agreed not to file another motion until she completed her probation. Thus, by his own tacit admission, Scott recognized Lawanda's status as a felon on probation minimized her opportunities to find work.

In sum, we conclude the trial court acted within its discretion in refusing to impute income to Lawanda.

# IV

## *Order to Pay a Portion of Lawanda's Attorney Fees*

Scott contends the trial court abused its discretion by awarding attorney fees without considering the section 4320 factors and by failing to consider the totality of Scott's financial circumstances. On this record, there was no abuse of discretion.

"It is well settled that the award of attorney fees and costs in family law matters is within the broad discretion of the trial court." (*In re Marriage of Bergman* (1985) 168 Cal.APp.3d 742, 763.) We review orders awarding attorney fees in family law matters for an abuse of discretion. (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 283.) " 'An abuse of discretion occurs "where, considering all the relevant circumstances, the court has exceeded the bounds of reason or it can fairly be said that no judge would reasonably make the same order under the same circumstances." [Citation.]' [Citation.]" (*In re Marriage of Bower* (2002) 96 Cal.App.4th 893, 898-899.)

Sections 2030 and 2032 provide the statutory basis for attorney fees awards in the family law setting. Section 2030 reads in relevant part: "(a)(1) In a proceeding for dissolution of marriage, nullity of marriage, or legal separation of the parties, and in any proceeding subsequent to entry of a related judgment, the court shall ensure that each party has access to legal representation to preserve each party's rights by ordering, if necessary based on the income and needs assessments, one party, except a governmental entity, to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding. [¶] (2) When a request for attorney's fees and costs is made, the court shall make findings on whether an award of attorney's fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties. If the findings demonstrate disparity in access and ability to pay, the court

15

shall make an order awarding attorney's fees and costs. A party who lacks the financial ability to hire an attorney may request, as an in pro per litigant, that the court order the other party, if that other party has the financial ability, to pay a reasonable amount to allow the unrepresented party to retain an attorney in a timely manner before proceedings in the matter go forward."

Section 2032 offers trial courts additional guidance in making the attorney fees award: "(a) The court may make an award of attorney's fees and costs under Section 2030 or 2031 where the making of the award, and the amount of the award, are just and reasonable under the relative circumstances of the respective parties. [¶] (b) In determining what is just and reasonable under the relative circumstances, the court shall take into consideration the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately, taking into consideration, to the extent relevant, the circumstances of the respective parties described in Section 4320. The fact that the party requesting an award of attorney's fees and costs has resources from which the party could pay the party's own attorney's fees and costs is not itself a bar to an order that the other party pay part or all of the fees and costs requested. Financial resources are only one factor for the court to consider in determining how to apportion the overall cost of the litigation equitably between the parties under their relative circumstances."

Scott first contends the trial court abused its discretion in ordering him to pay Lawanda's attorney fees by refusing to consider the section 4320 factors in conjunction with section 2032. As discussed above, there is evidence the trial court considered the section 4320 factors. The fact the court did not recite the factors on the record does not mean the factors were not considered in reaching its decision. Thus, this claim fails.

Scott also contends the trial court abused its discretion by failing to consider his entire financial situation. The record belies Scott's contention. In reaching its decision,

16

the trial court expressly considered the income and expense declarations filed by both parties. The trial court also heard Scott's testimony (and counsel's argument) regarding Scott's entire financial situation, including medical bills and attorney fees.

Scott further contends it was an abuse of discretion for the trial court to consider his retirement savings account as money available for attorney fees and suggest Scott stop paying the mortgage on his rental property in order to reduce his monthly expenses by $200. Scott cites no legal authority to support his claim the trial court is precluded from considering any and all sources of money when assessing a party's ability to pay attorney fees, including retirement accounts. The claim is, therefore, forfeited. (Cal. Rules of Court, rule 8.204(a)(1)(C); see *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785; see also *Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655-656 [appellant is required to present legal authority in support of each issue raised, along with citations to the record, otherwise the issue is forfeited]; see also *Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 113 [it is appellant's burden to support claims of error with citation to legal authority].)

Even if the claim were not forfeited, Scott has failed to show an abuse of discretion. To support his claim, Scott focuses on his own dwindling financial resources. However, financial resources are but one element to be considered in determining whether to award attorney fees. The overall goal for issuing an award of attorney fees is "to apportion the overall cost of the litigation equitably between the parties under their relative circumstances." (§ 2032.)

When considering the relative circumstances of Scott and Lawanda, it is clear the trial court acted within its discretion in issuing the order. Scott owns a time-share, owns real property, has a $15,000 retirement savings account, owns a truck, lives with another adult who shares the bills, and has a steady, reliable retirement income from NASA. Both Scott and Lawanda have medical conditions and medical bills to pay. Scott,

17

however, has medical insurance; Lawanda does not. Lawanda has no savings, owns nothing, and her only income is her spousal support and her community share of Scott's retirement. And though it is not dispositive, we note the attorney fees both parties have incurred are based exclusively on Scott's repeated, unsuccessful motions to modify or terminate spousal support. The trial court did not abuse its discretion in ordering Scott to pay a portion of Lawanda's attorney fees.

## DISPOSITION

The order of the trial court is affirmed. Costs are awarded to Lawanda Torok. (Cal. Rules of Court, rule 8.278(a)(1), (2).)


      HOCH    , J.


We concur:


      HULL    , Acting P. J.


      ROBIE    , J.