Filed 11/18/21  Marriage of McNeil CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re Marriage of MICHELLE VITTONE-McNEIL and KEVIN McNEIL. | B306063 |
| | (Los Angeles County Super. Ct. No. 17VEFL00566) |
| MICHELLE VITTONE-McNEIL,<br><br>    Respondent,<br><br>    v.<br><br>KEVIN McNEIL,<br><br>    Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael R. Amerian, Judge.  Affirmed.

Pamela Rae Tripp for Appellant.

Alpert Law Group, Jeffrey Alpert and Dean Asher for Respondent.

In this marital dissolution action, appellant Kevin McNeil (Kevin)[1] appeals from the trial court's order denying his request to modify spousal support and denying his request for reimbursement for postseparation mortgage payments he made on a community property residence. We affirm the trial court's order.

## BACKGROUND

**Petition for dissolution and domestic violence restraining order**

Respondent Michelle Vittone-McNeil (Michelle) filed a petition for dissolution of marriage on August 17, 2017. An incident of domestic violence between the parties on September 6, 2017 resulted in the issuance of a temporary restraining order against Kevin the following day. On January 30, 2018, the trial court (the Honorable Shirley K. Watkins) granted Michelle's request for a domestic violence restraining order (DVRO) against Kevin for a period of one year and accorded Michelle exclusive use of the couple's home.[2] The court ordered both parties to pay one-half of the mortgage, noting that it was taking into consideration Michelle's ability to pay: "[R]ight now she does not have demonstrated income to pay the entire mortgage payment and to provide for her own support." Michelle was not working at the time, although she had historically earned more than Kevin during the marriage. The trial court further noted that the

---

[1] Because the parties share the same surname, we refer to them by their first names to avoid confusion.

[2] The DVRO was subsequently extended for an additional five years.

2

payment order was "subject to reallocation, *Watts*[3] credits, all these things."

**Marital settlement agreement and judgment**

In May 2018, the parties entered into a stipulation and marital settlement agreement (MSA) that required Kevin to pay spousal support to Michelle in the initial amount of $2,000 per month for 24 months following the sale of the community residence and in decreasing amounts thereafter for a period of up to five years. The MSA also incorporated Kevin's obligation to pay one-half of the mortgage: "Pending the commencement of spousal support as set forth herein [Kevin] shall continue to pay 1/2 of the Wooden mortgage in the approximate sum of $1828 [per] month." The MSA was entered as a judgment on October 26, 2018, by the Honorable Michael Amerian, to whom the matter had been reassigned.

On June 8, 2019, Kevin filed a request for an order seeking credits, pursuant to *In re Marriage of Epstein* (1979) 24 Cal.3d 76 (*Epstein*), superseded by statute on other grounds as stated in *In re Marriage of Walrath* (1998) 17 Cal.4th 907, 914, for mortgage payments made from his separate property since October 1, 2017, and pursuant to *Watts, supra*, 171 Cal.App.3d 366 that Michelle

---

[3] The community may assert a claim for reimbursement for the value of one spouse's exclusive use of community property between the date of separation and the date on which the community no longer has an interest in the property. Such claims are commonly referred to as *Watts* charges or credits, after *In re Marriage of Watts* (1985) 171 Cal.App.3d 366 (*Watts*), in which the court held that reimbursement to the community may be ordered for a spouse's postseparation exclusive use of a community asset.

3

be charged with the fair rental value of the residence since October 1, 2017. The trial court issued an order on September 19, 2019, denying without prejudice Kevin's request for *Watts* charges and requiring the parties to meet and confer on the issue of *Epstein* credits. The order stated that "[i]f the parties cannot agree on the issue of credits amount either party may file a motion to determine credits."

The parties were unable to agree on *Epstein* credits, and Kevin filed a request for an order determining credits. At the December 17, 2019 hearing on Kevin's request, the parties informed the trial court that the couple's residence had been sold and that the sale proceeds were being held in escrow. The trial court denied Kevin's request for *Watts* charges and for *Epstein* credits after October 26, 2018—the date judgment had been entered—finding that the MSA contemplated that Kevin's mortgage payments would be in lieu of spousal support. In its December 17, 2019 minute order, the trial court reasoned as follows:

"The fact that [Kevin's] half of the mortgage payments until the property sold was $1,818.63/month and the MSA provides that [Kevin] will pay $2,000 in spousal support upon the close of escrow reasonably supports this conclusion. Moreover, the only reason [Michelle] was left with sole possession of the residence is because of [Kevin's] conduct which led to the issuance of the Domestic Violence Restraining Order. That fact reinforces the Court's belief that the overall equities of this case are best served by denying [Kevin's] request for Watt's charges to [Michelle]."

On December 19, 2019, Kevin filed a request for an order terminating spousal support based on Michelle's earnings, earnings ability, and income and expense declaration. Kevin's

4

declaration in support of the request stated that on October 24, 2019, Michelle had received more than $400,000 in proceeds from the sale of the community residence, that throughout the marriage she had earned more than he, and that her income and expense declaration for the first nine months of 2019 showed that she had out-earned Kevin during that period.

On January 29, 2020, the trial court denied the request to modify spousal support, finding that Kevin failed to meet his burden of proving a change of circumstances. The court denied the request without prejudice, noting that the MSA required the parties to exchange updated income and expense declarations every six months. The court interpreted the agreement to allow the parties to request reconsideration of spousal support every six months.

The trial court denied Kevin's request for *Watts* charges or *Esptein* credits from the date of the DVRO to the date of judgment, reiterating the reasons articulated in its December 17, 2019 order denying Kevin credits for mortgage payments made after entry of the judgment:

> "The Court looks to the procedural history and the terms of the parties' MSA as evidence that [Kevin's] payment of half of the mortgage was in lieu of spousal support between the time he was ordered to vacate the community residence on September 7, 2017, pursuant to the Temporary Domestic Violence Restraining Order ('DRVO') and the entry of judgment in October 2018. First, the procedural history shows that [Michelle] never sought temporary spousal support. Second, the fact that [Kevin's] half of the mortgage payments until the property sold was $1,818.63/month and the MSA provides that [Kevin] will pay $2,000 in spousal support upon the close of escrow reasonably supports the conclusion that the

5

court should consider the payments in lieu of spousal support.  Moreover, the only reason [Michelle] was left with sole possession of the residence is because of [Kevin's] conduct which led to issuance of the Domestic Violence Restraining Order.  That fact reinforces the Court's belief that the overall equities of this case are best served by denying [Kevin's] request for charges for this time period just as it arrived at the same conclusion for the same reasons for the period after Judgment was entered."

Kevin filed this appeal challenging the trial court's January 29, 2020 order denying his request for *Epstein* credits and his request to modify spousal support.[4]

## DISCUSSION

### I.  *Epstein* credits

####   A.  *Applicable law and standard of review*

Family Code section 2626 gives a court "jurisdiction to order reimbursement in cases it deems appropriate for debts paid after separation but before trial."  A court has broad discretion to order reimbursement to a spouse who uses separate property funds to make postseparation payments on a preexisting community obligation.  (*Epstein, supra*, 24 Cal.3d at pp. 83-84.)  Such reimbursements are commonly referred to as *Epstein* credits.

The court in *Epstein* set forth equitable guidelines for determining when reimbursement is and is not appropriate.  The court stated, for example:  "'[R]eimbursement should not be ordered where the payment on account of a preexisting

---

[4]    Kevin does not challenge the denial of his request for *Watts* charges.

6

community obligation constituted in reality a discharge of the paying spouse's duty to support the other spouse . . . . Following separation, the preferred source for payment of support is the separate property of the supporting spouse that would have been community property if the spouses were not separated. . . . Payment of a debt, of course, may constitute payment of spousal or child support. . . . When in fact it does, reimbursement is inappropriate.'" (*Epstein, supra*, 24 Cal.3d at p. 85, citations omitted, quoting *In re Marriage of Smith* (1978) 79 Cal.App.3d 725, 747-748.)

We review the trial court's rulings on *Epstein* credits for abuse of discretion. (*In re Marriage of Oliverez* (2019) 33 Cal.App.5th 298, 318-319.) In doing so, we do not replace the trial court's exercise of discretion with our own. We must uphold the trial court's decision if any substantial evidence supports it, without considering whether there also exists substantial evidence to support a contrary decision. (*Id.* at p. 319.)

### B. *Forfeiture re: postjudgment credits*

As a preliminary matter, Kevin has forfeited any challenge to the trial court's December 17, 2019 order denying him *Epstein* credits for the period following entry of judgment on the MSA because he did not appeal from that order. Kevin does not dispute that fact; however, he contends the trial court "clearly revisited the issue" of postjudgment credits in its January 29, 2020 order. (Boldface and capitalization omitted.) The record does not support that contention. The January 29, 2020 order simply states that the trial court's reasons for denying Kevin credits for the period between issuance of the DVRO and entry of judgment were the same reasons for denying him postjudgment credits: "[T]he overall equities of this case are best served by

7

denying [Kevin's] request for charges for this time period just as it arrived at the same conclusion for the same reasons for the period after Judgment was entered."

### C.   *No abuse of discretion re: prejudgment credits*

The trial court found that Kevin's postseparation mortgage payments made before entry of judgment were in lieu of spousal support.  Substantial evidence supports that finding.  At the January 30, 2018 hearing at which Judge Watkins ordered both parties to pay one-half of the monthly mortgage payments, Michelle presented an income and expense declaration stating that she earned no more than $3,500 a month.  When Kevin argued that requiring him to pay one-half of the mortgage in addition to his own rent was inequitable, Judge Watkins responded:  "But I'm also taking into consideration ability to pay and right now she does not have demonstrated income to pay the entire mortgage payment and to provide for her own support."

"Courts have recognized that the existence of a need for support is a prime consideration in determining whether a given payment is, in reality, in discharge of an obligation of support.  [Citations.]  A second key consideration is whether the payment was in addition to reasonable support already being provided by the paying spouse, either pursuant to or in the absence of a court order."  (*In re Marriage of Garcia* (1990) 224 Cal.App.3d 885, 893 (*Garcia*).)  The evidence here shows that Michelle needed support but did not seek temporary spousal support pending sale of the community residence.  Because Kevin was not providing such support, "the inference is compelling that the mortgage payments were intended as a form of support."  (*Ibid*.)

The record does not support Kevin's contention that Judge Watkins ordered him to pay one-half of the mortgage solely to

8

preserve the community asset, and not in lieu of spousal support. At the January 30, 2018 hearing, in response to a question by Kevin's counsel, Judge Watkins reiterated her reasons for ordering Kevin to pay one-half of the monthly mortgage payments:

> "THE COURT: There were three reasons actually; to preserve the asset, current disparity in income, and because she has a right to possession of the property as a protected person.
>
> "[KEVIN'S COUNSEL]: I understand that.
>
> "THE COURT: So she has to have the ability to live there and that, and if I think she doesn't have the ability to pay, then that defeats the purpose of her living there.
>
> "[KEVIN'S COUNSEL]: Right. I understand that."

Substantial evidence also supports the trial court's finding that the MSA contemplated that Kevin's postseparation mortgage payments were in lieu of temporary spousal support. Kevin's monthly mortgage payments of $1,818.63 per month from the date of separation until the sale of the residence roughly equal his initial $2,000 monthly spousal support obligation. Cessation of Kevin's obligation to pay one-half of the mortgage and commencement of his obligation to pay spousal support are both tied to the same event—sale of the community residence.

The record does not support Kevin's contention that the trial court "did a complete reversal" of its prior findings and orders purportedly according him *Epstein* credits for postseparation mortgage payments. Neither Judge Watkins nor Judge Amerian stated that Kevin would be issued credits for the mortgage payments. Rather, the record shows that when Judge Watkins ordered Kevin to pay one-half of the mortgage, she

9

stated that the payments would be "subject to reallocation" and credits. Judge Amerian understood that statement to mean "flagging the issue" of credits, "rather than making a formal finding."

Judge Amerian indicated at the August 21, 2019 hearing that he thought *Epstein* credits generally were appropriate under the terms of the parties' MSA but stated that he lacked the information necessary to order such credits:

> "Unfortunately, I don't have enough information to make specific orders because neither side has given me a full and complete accounting of what each of them has contributed to the house in the meantime, while this has been pending. [¶] So what I would like to do is set it over for 30 days and give everyone a chance to provide me with declarations that set forth a complete accounting of what they have contributed. That way the court at the next appearance can make specific orders than can be incorporated into escrow instructions, and each side can be made whole for what they've been contributing up until now and up through the close of escrow."

The written order issued after the August 21, 2019 hearing required the parties to meet and confer on the issue of *Epstein* credits: "As to [Kevin's] request for credits, credits will be retroactive to the date of separation. . . . The parties are to meet and confer on the issue of credits. If the parties cannot agree on the issue of credits amount either party may file a motion to determine credits." Judge Amerian subsequently made clear that any determination of *Epstein* credits would not include mortgage payments. He rejected an argument by Kevin's counsel to the contrary: "Well, when I made that ruling, I didn't contemplate that the mortgage payments would be included in that. I

10

contemplated things like whatever miscellaneous expenses were incurred over the course of the last two years or so while the property and the parties' relationship, at least as it related to the property, was still in flux."

The record does not support Kevin's assertion that he was accorded *Epstein* credits for his postseparation mortgage payments. The trial court did not abuse its discretion by denying Kevin's request for such credits.

## II.    Modification of spousal support

### A.    *Applicable law and standard of review*

To modify an order for spousal support, a trial court must first find ""a material change of circumstances since the last order."" (*In re Marriage of Minkin* (2017) 11 Cal.App.5th 939, 956 (*Minkin*).) A court may not find a change of circumstances in reconsideration of a circumstance that has not changed since the previous order. (*In re Marriage of Farrell* (1985) 171 Cal.App.3d 695, 703 (*Farrell*).)

When support is governed by an MSA, the trial court's changed-circumstances determination must ""give effect to the intent and reasonable expectations of the parties as expressed in the agreement."" (*Minkin, supra*, 11 Cal.App.5th at p. 957.) A trial court's discretion to modify a spousal support order is also constrained by the terms of the parties' MSA. (*In re Marriage of Dietz* (2009) 176 Cal.App.4th 387, 398.) MSA's are interpreted under the same rules governing contract interpretation generally. (*In re Marriage of Hibbard* (2013) 212 Cal.App.4th 1007, 1012.) ""The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. [Citation.] If contractual language is clear and explicit, it governs."" (*Id.* at p. 1013.)

11

We review the order denying Kevin's request to modify spousal support for abuse of discretion. (*In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 47.)

### B.     *No abuse of discretion*

The record discloses no abuse of discretion. Sale of the community residence yielded proceeds equal to Michelle's one-half interest in a community asset and was not a material change in circumstance warranting reduction of spousal support. (*In re Marriage of Rabkin* (1986) 179 Cal.App.3d 1071, 1081.)

The trial court did not err by rejecting Kevin's claim that Michelle's return to work in 2019 was a material change in circumstance. Kevin knew when he signed the MSA that Michelle had out-earned him throughout the marriage. Kevin also knew that Michelle was not working at the time the parties entered into the MSA, yet the MSA contains no provision for reduction in support payments upon her return to work. Substantial evidence supports the trial court's finding that Michelle's greater earning capacity was known and contemplated by both parties at the time of the MSA. (*Farrell, supra*, 171 Cal.App.3d at p. 703.)

The trial court similarly did not err by finding Kevin's request to modify spousal support to be premature. Under the terms of the parties' MSA, Kevin's obligation to pay spousal support commenced upon the sale of the community residence. Kevin's request to modify support was filed shortly thereafter, only two or three months after his support obligation commenced. In denying Kevin's request, the trial court also weighed and considered the relatively short duration of Kevin's support obligation in relation to the couple's 21-year marriage.

The trial court did not abuse its discretion by denying the request to modify spousal support.

## DISPOSITION

The trial court's January 29, 2020 order denying Kevin's request to modify spousal support and denying his request for *Epstein* credits for postseparation mortgage payments is affirmed. Michelle shall recover her costs on appeal.


_____
CHAVEZ, J.


We concur:


_____
ASHMANN-GERST, Acting P. J.


_____
HOFFSTADT, J.

13